| | |
|---|---|
| 1 | DOUGLAS E. MIRELL (State Bar No. 094169) |
| 2 | CHARLES J. HARDER (State Bar No. 184593) |
|   | SARAH E. LUPPEN (State Bar No. 258559) |
| 3 | HARDER MIRELL & ABRAMS LLP |
|   | 1925 Century Park East, Suite 800 |
| 4 | Los Angeles, California 90067 |
|   | Telephone:  (424) 203-1600 |
| 5 | Facsimile:   (424) 203-1601 |
| 6 | Attorneys for Plaintiff |
|   | HALLE BERRY |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HALLE BERRY, an individual, | Case No. CV13-05428-JAK(CWx) |
| Plaintiff, | **PLAINTIFF HALLE BERRY'S RESPONSE TO DEFENDANTS' "JOINT" STATEMENT OF DISCOVERY DISPUTES** |
| v. | |
| TOYWATCH S.p.A., an Italian corporation; TRIBOO DIGITALE USA, INC., a Delaware corporation; TRIBOO DIGITALE S.r.l., an Italian limited liability company; WE'RE WITH THE BRAND, LLC d/b/a "Capobianco & Associates," a California limited liability company; CINDY CAPOBIANCO, an individual; and DOES 3-10, inclusive, | Assigned for All Purposes to the Hon. John A. Kronstadt |
| | Magistrate Judge Carla Woehrle |
| | Date:            June 3, 2014 |
| | Time:           2:00 p.m. |
| | Courtroom:   640 |
| | Action Filed:       May 30, 2013 |
| | Action Removed:  July 26, 2013 |
| | Trial Date:          Sept. 9, 2014 |
| Defendants. | |

Plaintiff Halle Berry ("Plaintiff") submits this Response to Defendants' "Joint" Statement of Discovery Disputes in advance of the discovery conference now scheduled to be held on Tuesday, June 3, 2014, at 2:00 p.m., before the Honorable Carla M. Woehrle, United States Magistrate Judge, in Courtroom 640 of

- 1 -

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "JOINT" STATEMENT OF DISCOVERY DISPUTES**

the Roybal Federal Building, located at 255 E. Temple Street, Los Angeles, California.

On Tuesday, May 27, 2014, at 6:15 p.m., Defendants ToyWatch S.p.A. ("ToyWatch"), Triboo Digitale USA and Triboo Digitale S.r.l. (together "Triboo"), Cindy Capobianco and We're With The Brand LLC, d/b/a Capobianco (together "Capobianco") (collectively "Defendants") filed a "Joint" Statement of Discovery Disputes without notice and without affording Plaintiff's counsel the opportunity to review or comment upon it.  Declaration of Sarah E. Luppen ("Luppen Decl.") at ¶2.  Defendants' conduct in filing their "Joint" Statement in this manner was both unprofessional and contrary to the purpose of the informal discovery conference in which the parties agreed to participate.

Plaintiff files this Response to Defendants' "Joint" Statement to correct the following inaccuracies and misleading statements made by Defendants in their unilaterally filed "Joint" Statement:

**Regarding the Circumstances Surrounding Defendants' Unilateral Filing of a "Joint" Statement of Discovery Disputes**

On May 13, 2014, this Court ordered the parties to file a "Joint list of the discovery disputes and a brief statement as to the nature of each dispute" in advance of the informal discovery dispute hearing then scheduled for May 30, 2014, and subsequently rescheduled for June 3.  (Docs. 55 & 61.)  The Court's Order did not specify a deadline for the submission of this document.  (Doc. 55.)  Following a telephonic meet-and-confer conference on this topic on Sunday, May 18, 2014, the parties agreed upon the list of disputes but failed to agree on formatting.  Luppen Decl. at ¶3.  Specifically, Plaintiff did not view Defendants' inclusion of the history of the parties' meet-and-confer efforts, especially as it was characterized by Defendants, to be necessary or appropriate in light of the Court's request that the parties briefly describe their discovery disputes.  *Id.* at ¶4.  Plaintiff asserted that this Court was interested only in resolving the parties' existing

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "JOINT" STATEMENT OF DISCOVERY DISPUTES**

disputes, rather than addressing any prior posturing by any party. Accordingly, Plaintiff proposed an alternative draft that stripped away the rhetoric and, instead, listed each party's general stance as to the nature of their disputes. *Id.* at ¶5, **Ex. A**. This was not a motion to compel and, in fact, was agreed to in hopes of avoiding such a motion.

As of Saturday, May 24 (the Saturday of the Memorial Day holiday weekend), the parties continued to dispute the contents of the draft to be filed with the Court. *Id.* at ¶6. Plaintiff's counsel suggested that the parties discontinue trading emails over the holiday weekend and, instead, schedule a conference call for Tuesday morning, May 27, to resolve any remaining issues. *Id.* at ¶6, **Ex. B**. Plaintiff received no response from Defendants' counsel. *Id.* At approximately 9:30 a.m. on May 27, Plaintiff's counsel emailed Defendants' counsel to set up a call to finally resolve their formatting dispute. *Id.* at ¶7, **Ex. C**. Plaintiff's counsel also left a voicemail message for Triboo's counsel on this subject. *Id.* At approximately 12:15 p.m. that afternoon, counsel for Triboo responded to Plaintiff's email and explained that she and counsel for ToyWatch had worked over the weekend on a joint statement for filing on Tuesday. *Id.* at ¶8, **Ex. D**. No draft joint statement was attached to her email. *Id.* Plaintiff asked if Triboo meant to attach a proposed joint statement for Plaintiff's review. *Id*. Triboo responded that ToyWatch's counsel was doing the "final cut and pastes." *Id.* Plaintiff did not construe Triboo's email to mean that Defendants would not be sending Plaintiff a draft to review. *Id.* ToyWatch's counsel never responded to Plaintiff's email. *Id.*

At 6:15 p.m. that evening, Plaintiff received ECF notification that Defendants' "Joint" Statement had been filed with the Court. *Id.* at ¶9; (Doc. 60). At no point did Defendants inform Plaintiff of the following: (1) that Defendants refused to participate in the Tuesday call to resolve the formatting dispute; (2) that Defendants believed the parties had reached an impasse on the issue; (3) that Defendants would be filing their own "Joint" Statement; or (4) that Defendants

- 3 -

would be filing their "Joint" Statement without providing Plaintiff a chance to review or comment on any draft. *Id.* at ¶9.

### *Regarding the Nature of the Litigation*

Defendants' characterization of Plaintiff's allegations against them is inadequate and misleading. Defendants used Plaintiff's name, image, identity and persona within their advertising, marketing and promotion of the sale of watch products sold by ToyWatch. They used the e-commerce services of Triboo, and the public relations and advertising services of Capobianco, on websites and social media platforms owned by ToyWatch and managed by Triboo and Capobianco. Specifically, for a period of close to one year, Defendants used Plaintiff's name and images at their international e-commerce website to sell watch products. For instance, from the ToyWatch homepage, after clicking "Celebrities," customers were directed to a page with several pictures of Plaintiff, a picture of a ToyWatch watch, and the name "HALLE," all adjacent to one another. Luppen Decl. at ¶10, **Ex. E**. When customers clicked on the picture of the watch, they were directed to the page where they could purchase the product online. *Id.* During that same period of time, Defendants also used Plaintiff's name and image in Facebook and Twitter advertising. *Id.* The infringing Facebook post directly linked to the page where customers could purchase the product online. *Id.* All of the advertisements used Plaintiff's name and image to market and sell the ToyWatch brand generally, and all of its watch products. *Id.*

Triboo contends that "it has been erroneously named in this Action" because it allegedly "makes no content determinations with respect to what is to appear on a website or a Facebook page." (Doc. 60 at 3:12–19.) Discovery has shown otherwise. First, the invoice that accompanied Plaintiff's counsel's purchase of the infringing ToyWatch product identifies Triboo. Luppen Decl. at ¶11, **Ex. F**. Second, Triboo's verified discovery responses confirm its integral role in the alleged infringements. For example, Triboo admits that the infringing photograph

- 4 -

of Plaintiff "was published on [ToyWatch's] international website **by Triboo**" and that the photograph on Triboo's Facebook page "was published **by Triboo**." *Id.* at ¶12, **Ex. G** (emphasis added). The fact that Triboo allegedly published the infringing content pursuant to ToyWatch's instructions is irrelevant to Triboo's culpability and ultimate liability. *See*, *e.g.*, *Aidan Ming-Ho Leung v. Verdugo Hills Hosp.*, 55 Cal.4th 291, 303 (2012) ("Under joint and several liability, 'each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury.'").

### Regarding the History of the Parties' Meet-*And-Confer Discussions*

Defendants contend that they were forced to serve **35** subpoenas because of Plaintiff's "refusal" to produce relevant documents despite Plaintiff's alleged agreement to "cure" alleged "deficiencies" in her discovery responses. (Doc. 60 at 4:11–13, 4:22–5:1.) This is a gross mischaracterization.

First, in response to Defendants' discovery requests, Plaintiff has produced over 130 pages of her commercial endorsement agreements. Luppen Decl. ¶13. Plaintiff's counsel has confirmed with Plaintiff and each of her representatives who reasonably would have possession of such agreements that these are all of the commercial endorsement agreements in Plaintiff's (and her representatives') possession, custody and control. *Id.*

Second, on February 4, 2014, shortly after their January 24th meet-and-confer conference, the parties participated in a mediation that resulted in settlement discussions which lasted for approximately three months. *Id.* at ¶14. As a result, and in the spirit of settlement, the parties refrained from further addressing their discovery disputes during that period. *Id.* They instead jointly sought and obtained a two-month extension of the discovery deadline and trial date. (Doc. 49.) Without prior warning, and without first trying to resume any discussions from the January 24 conference, ToyWatch and Capobianco served a notice of intent to serve twenty (20) subpoenas on April 30, 2014. Luppen Decl. at ¶15. On May 21, 2014,

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "JOINT" STATEMENT OF DISCOVERY DISPUTES**

ToyWatch and Capobianco served a notice of intent to serve fifteen (15) additional subpoenas. *Id.*

In sum, Plaintiff legitimately objects to certain categories of documents and information requested by Defendants. Plaintiff's counsel indicated their willingness to informally resolve those disputes prior to the parties' settlement discussions. Plaintiff never represented that she did not produce the documents because they were not in her possession, custody or control. Accordingly, it is highly inappropriate for Defendants to claim this as their pretext for serving 35 subpoenas upon non-parties asking for documents that are the subject of the parties' pending discovery disputes. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (holding that when an opposing party and a non-party both possess documents, those documents should be sought from the party to the case); *Davis v. Ramen*, 106CV01216AWISKOPC, 2010 WL 1948560, at *1 (E.D. Cal., May 11, 2010) (denying a request for a subpoena because the plaintiff had not demonstrated that the records were only obtainable through the non-party). Given the wholly duplicative nature of these subpoenas, it is certainly not inappropriate for Plaintiff's counsel to undertake to represent these subpoenaed non-parties. Defendants' claim that this representation is "a blatant attempt to obstruct Defendants' good faith discovery practices" is as fatuous as it is disingenuous. (Doc. 60 at 4:27.)

### *Regarding Scheduling Depositions*

Plaintiff's television series[1] filming obligations and her previously-booked travel plans for a two-week-long summer family vacation prevent her from being available for a deposition until July 29, 2014. *Id.* at ¶16. Plaintiff's counsel has informed Defendants that Plaintiff's managers, Jeffrey Wolman and Vincent Cirrincione, would make themselves available for deposition prior to that time. *Id.*

---

[1] Ms. Berry is the star of a serialized dramatic television series entitled *Extant* that is currently scheduled to premiere on July 9, 2014, on the CBS Television Network. *See* http://www.cbs.com/shows/extant/about/.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "JOINT" STATEMENT OF DISCOVERY DISPUTES**

Most importantly, these are the individuals who will have the most information regarding Plaintiff's endorsement contracts. *Id.*

Plaintiff's counsel never informed Defendants that Plaintiff would be available for a deposition in May 2014. (*See* Doc. 60 at 4:14–15, 5:15–16 and 15:5–10.) As Plaintiff's counsel, Douglas E. Mirell, informed Defendants' counsel in a May 22, 2014, email:

> In your proposed Joint List, you **twice** state that defendants were told that Ms. Berry was available to be deposed in May 2014. See page 4, lines 3-4 & page 6, lines 4-5. You cite no support for either of these statements and point to no written representations to this effect. Nevertheless, Ms. Luppen advises me that you told her that this assertion derives from something I purportedly told Jim Potepan in a phone conversation. That is a lie. I never made any such statement and I hereby demand that you **IMMEDIATELY AND FORMALLY** retract this claim and that you never again make such a blatantly false and wholly unsupported assertion. Finally, just so the record is perfectly clear: Ms. Berry's representatives did not finally advise us of her availability dates for a deposition until Tuesday of last week (May 13) and I have had no communications with Mr. Potepan since that date.

Luppen Decl. at ¶17, **Ex. H** (emphasis in original).  Defendants never refuted these facts, choosing instead simply to characterize this as a "minor issue." *Id.*, **Ex. I**. The fact that Defendants continue to make false representations to this Court concerning Plaintiff's deposition availability in the **filed** version of their "Joint" Statement is egregious.

Further, Plaintiff noticed the "person most qualified" depositions for each of the Defendants *last year*. *Id.* at ¶18, **Exs. J–N**. Defendants have thus far refused to provide any available dates for any of these depositions, and now seek to illogically and irrationally tie the commencement of those depositions to the completion of Plaintiff's deposition. *Id.*

### Regarding Defendants' Contention that Pla*intiff Has Not Worked with her Representatives in Responding to Discovery Requests*

Defendants contend that "it was apparent that Plaintiff had not asked her publicists for [ ] relevant documents." (Doc. 60 at 7:16–18.)  That is not the case.

- 7 -

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "JOINT" STATEMENT OF DISCOVERY DISPUTES**

Plaintiff's counsel has worked with all of Plaintiff's representatives who reasonably would have responsive information, and has produced all relevant and responsive documents and information in Plaintiff's (and her representatives') possession, custody and control.  Luppen Decl. at ¶13.

**Regarding ToyWatch's Contention that it has Produced All Non-Privileged Communications**

Defendants contend that they have produced all non-privileged communications within ToyWatch, between ToyWatch and Triboo, and between ToyWatch and Capobianco regarding the use of Plaintiff's name or image to promote Defendants' products.  (Doc. 60 at 17:15.)  Plaintiff respectfully disagrees.  ToyWatch has not produced a single such document in response to discovery.  Luppen Decl. at ¶19.  ToyWatch's responses to interrogatories, however, confirm that such responsive documents must actually exist.  For instance, ToyWatch's response to Plaintiff's Interrogatory 1 references the following communications:

- "ToyWatch's 'Toy2Fly Skeleton Only Time White' watch (the "Watch") was given to Plaintiff by one of the consultants used by Capobianco."
- "ToyWatch was advised by Capobianco that there were photographs taken of Plaintiff at the pumpkin patch wearing the Watch, and that such photographs were now on the internet, specifically on zimbio.com, which is a celebrity photo website viewed by millions of people."
- "One of the photographs taken at the pumpkin patch by the paparazzi, of Plaintiff wearing a hat, shorts and boots, and walking across a dirt parking lot, while wearing the Watch (the "Photograph"), was forwarded by Capobianco to ToyWatch."
- "The Photograph was published by Capobianco, at the request of ToyWatch, on this USA Facebook page on or about October 7, 2012."
- "The Photograph was published by Triboo, per the instructions of ToyWatch, on this official Facebook page on November 12, 2012."

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "JOINT" STATEMENT OF DISCOVERY DISPUTES**

- "The Photograph was published on this international website by Triboo, per ToyWatch's instructions, on October 11, 2012, in the 'news' subsection of the website."
- "Then, four small pictures of Plaintiff . . . were arranged into a Collage, and the Collage was published in the 'celebrities' subsection of the international website on or about February 4, 2013."

Luppen Decl. at ¶19, **Ex. O**.

In addition, since Triboo's retention of new counsel, Triboo has produced certain Italian-language emails that appear to further substantiate ToyWatch's failure to thoroughly search for and produce relevant and responsive communications. *Id.*

**Regarding Triboo's Position *Concerning Italian-to-English Translation of Emails***

Plaintiff proposes that the parties share the expense of translating certain Italian-language emails produced by Triboo that directly address the relationship between Triboo and ToyWatch with respect to the infringements at issue in this lawsuit. *See Alperin v. Vatican Bank*, No. , C 99-04941 MMC(EDL), 2006 WL 1663847, at *4 (N.D. Cal., June 15, 2006) ("If Plaintiff shows that there are crucial documents remaining that are untranslated, the Court may order translations done, perhaps at joint expense."); Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-C ("Since it is usually in the interest of all parties to have relevant documents translated, an effort should be made to *share* the costs.") (emphasis supplied).  Plaintiff has found no authority in this circuit holding that the requesting party bears the sole burden of translation, and Triboo has provided Plaintiff with no "applicable case law" supporting that position.  (Doc. 60 at 18:2–6.)

**Regarding Triboo's Explanation of the Relationship between Triboo, *ToyWatch and Innotrac***

As explained above, Triboo's name appears on the invoice for Plaintiff's

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "JOINT" STATEMENT OF DISCOVERY DISPUTES**

purchase of the infringing ToyWatch product. Luppen Decl. at ¶11, **Ex. F**. Triboo has failed to explain how it can be that it was "erroneously named in this Action," as Triboo contends, and also be the entity identified on the very invoices accompanying Plaintiff's counsel's purchase of the infringing product. Triboo's agreements with ToyWatch and Innotrac fail to explain the presence of Triboo's name on the relevant invoice. *Id.*

\* \* \*

Plaintiff's counsel look forward to meeting with the Court on June 3, 2014, to at least narrow, and hopefully resolve, the parties' existing discovery disputes.

DATED: May 30, 2014            HARDER MIRELL & ABRAMS LLP


By:   /s/ Douglas E. Mirell
      DOUGLAS E. MIRELL
      Email: dmirell@hmafirm.com
      CHARLES J. HARDER
      Email: charder@hmafirm.com
      SARAH E. LUPPEN
      Email: sluppen@hmafirm.com
      Harder Mirell & Abrams LLP
      1925 Century Park East, Suite 800
      Los Angeles, CA 90067
      Tel: (424) 203-1600
      Fax: (424) 203-1601

      Attorneys for Plaintiff
      HALLE BERRY

- 10 -

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "JOINT" STATEMENT OF DISCOVERY DISPUTES**