1                     UNITED STATES DISTRICT COURT

2

3                    CENTRAL DISTRICT OF CALIFORNIA

4                            WESTERN DIVISION

5

6

7    HALLE BERRY,                    )
                                     )
8                                    )
             PLAINTIFF,              )   CASE CV 13-5428-JAK(CWX)
9                                    )
             V.                      )   LOS ANGELES, CALIFORNIA
10                                   )   JUNE 26, 2014
                                     )
11   TOYWATCH S.P.A., ET AL.,        )
                                     )   (2:17 P.M. TO 3:39 P.M.)
12                                   )
             DEFENDANTS.             )
13                                   )
                                     )

14

15                              HEARING

16            BEFORE THE HONORABLE CARLA M. WOEHRLE
                  UNITED STATES MAGISTRATE JUDGE
17
     APPEARANCES:              SEE NEXT PAGE
18
     COURT REPORTER:           RECORDED; COURT SMART
19
     COURTROOM DEPUTY:         GAY ROBERSON
20
     TRANSCRIBER:              DOROTHY BABYKIN
21                             COURTHOUSE SERVICES
                               1218 VALEBROOK PLACE
22                             GLENDORA, CALIFORNIA  91740
                               (626) 963-0566
23

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
25

2

```
 1   APPEARANCES:
     FOR THE PLAINTIFF:          HARDER MIRELL & ABRAMS LLP
 2                               BY:  DOUGLAS E. MIRELL
                                      SARAH E. LUPPEN
 3                                    ATTORNEYS AT LAW
                                 1925 CENTURY PARK EAST
 4                               SUITE 800
                                 LOS ANGELES, CALIFORNIA  90067
 5
     FOR TOYWATCH:               LE CLAIRRYAN LLP
 6                               BY:  CHAD M. MANDELL
                                      ATTORNEY AT LAW
 7                               725 SOUTH FIGUEROA STREET
                                 SUITE 350
 8                               LOS ANGELES, CALIFORNIA  90017

 9   FOR TRIBOO DIGITALE:        CHRISTA & JACKSON
                                 BY:  LAURA KASSNER CHRISTA
10                                    ATTORNEY AT LAW
                                 1901 AVENUE OF THE STARS
11                               SUITE 1100
                                 LOS ANGELES, CALIFORNIA  90067
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                              I N D E X

2    CV 13-5428-JAK(CWX)                        JUNE 26, 2014

3    PROCEEDINGS:   DISCOVERY CONFERENCE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1      LOS ANGELES, CALIFORNIA; THURSDAY, JUNE 26, 2014; 2:17 P.M.

2              THE CLERK:  ALL RISE.  THIS UNITED STATES DISTRICT

3   COURT IS NOW IN SESSION.

4              THE HONORABLE CARLA M. WOEHRLE, UNITED STATES

5   MAGISTRATE JUDGE, PRESIDING.

6              THE COURT:  GOOD AFTERNOON.

7              THE CLERK:  CALLING CASE NUMBER CV 13-5428, HALLE

8   BERRY VERSUS TOYWATCH S.P.A., ET AL.

9              COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

10  RECORD.

11             MR. MIRELL:  GOOD AFTERNOON, YOUR HONOR.

12             DOUGLAS MIRELL, M-I-R-E-L-L, AND SARAH LUPPEN,

13  L-U-P-P-E-N, BOTH OF HARDER MIRELL & ABRAMS FOR PLAINTIFF

14  HALLE BERRY.

15             THE COURT:  THANK YOU.

16             MR. MANDELL:  GOOD AFTERNOON, YOUR HONOR.

17             CHAD MANDELL APPEARING ON BEHALF OF DEFENDANT CINDY

18  CAPOBIANCO, "WE'RE WITH THE BRAND," AND THE TOYWATCH

19  DEFENDANTS.

20             THE COURT:  THANK YOU.

21             MS. CHRISTA:  GOOD AFTERNOON, YOUR HONOR.

22             LAURA CHRISTA OF CHRISTA & JACKSON ON BEHALF OF

23  DEFENDANTS TRIBOO DIGITALE AND TRIBOO DIGITALE USA.

24             THE COURT:  OKAY.  THANKS.

25             SO, I DID GET THE JOINT STATEMENT.

1              YES?

2              MR. MIRELL:  YOUR HONOR, MAY I BE HEARD ON A

3     PROCEDURAL MATTER?

4              THE COURT:  SURE.

5              MR. MIRELL:  THERE'S A MEMBER OF THE FOURTH ESTATE

6     PRESENT.

7              THE COURT:  UH-HUM.

8              MR. MIRELL:  AND WE HAVE ATTORNEY'S EYES ONLY

9     DOCUMENTATION THAT WE MAY NEED TO BE DISCUSSING TODAY.  AND

10    THAT IS PURSUANT TO A PROTECTIVE ORDER THAT CONTROLS THE

11    DISSEMINATION OF THE INFORMATION CONTAINED IN THAT -- IN THAT

12    DOCUMENTATION.

13             SO, I WOULD LIKE TO FIRST REQUEST THAT THE

14    TRANSCRIPT OF THIS PROCEEDING, TO THE EXTENT THAT ONE IS

15    ORDERED, BE MAINTAINED CONFIDENTIALLY AND PURSUANT TO THE

16    ATTORNEY'S EYES ONLY PROVISIONS OF THAT -- OF THAT PROTECTIVE

17    ORDER.

18             AND, SECOND, THAT THE HEARING BE CLOSED TO THE

19    PUBLIC AND PRESS.

20             THE COURT:  OKAY.  WELL, I WON'T CLOSE THE ENTIRE

21    HEARING.  WE CAN -- IF THERE ARE ISSUES THAT ARISE -- BECAUSE

22    I THINK THERE ARE A NUMBER OF THINGS THAT WOULD NOT FALL

23    WITHIN THE SCOPE OF THE PROTECTIVE ORDER.  IF WE GET TO

24    ISSUES THAT HAVE BEEN PROPERLY DESIGNATED AS CONFIDENTIAL

25    UNDER THE PROTECTIVE ORDER, THEN, WE CAN ADDRESS THAT WHEN --

1    WHEN IT COMES UP.

2             MR. MIRELL:  ALL RIGHT.

3             WELL, I WOULD JUST THEN ENCOURAGE ALL COUNSEL TO BE

4    COGNIZANT.  WE RECEIVED DOCUMENTS AS EARLY -- AS LATE AS

5    YESTERDAY FROM -- FINALLY FROM THE TOYWATCH DEFENDANTS THAT

6    ARE LABELED "ATTORNEY'S EYES ONLY CONFIDENTIAL."  AND, SO, I

7    THINK TO THE EXTENT THERE IS ANY CONVERSATION ABOUT THOSE

8    DOCUMENTS OR OTHER AGREEMENTS THAT WE HAVE MUTUALLY

9    UNDERSTOOD ARE TO BE MAINTAINED AS "ATTORNEY'S EYES ONLY

10   CONFIDENTIAL," THAT WE WOULD ALL BE SENSITIVE TO THAT.

11            THE COURT:  YES.  I DON'T THINK WE -- I DON'T THINK

12   THERE SHOULD BE ANY NEED TO DISCUSS THE SUBSTANCE OF

13   DOCUMENTS ON THE RECORD.  BUT IF THAT TURNS OUT NOT TO BE THE

14   CASE, THEN, WE CAN ADDRESS THAT.

15            AND THEN THE TRANSCRIPT SIMILARLY DOES -- THE

16   PROCEDURE DOES PROVIDE FOR AN OPPORTUNITY TO REQUEST

17   REDACTIONS.  AND SUBJECT TO THAT PROCEDURE, THE TRANSCRIPT

18   WILL BE CONFIDENTIAL.  PORTIONS OF IT MAY BE DESIGNATED AS

19   CONFIDENTIAL.

20            MR. MIRELL:  ALL RIGHT.

21            THE COURT:  OKAY.  SO, I DO APPRECIATE GETTING THE

22   JOINT REPORT.  AND IT MAKES IT A LITTLE EASIER.  I'M SORRY I

23   DIDN'T GET IT UNTIL LATE YESTERDAY.  SO -- I'M DEALING WITH

24   SOME OTHER MATTERS, BUT I'VE HAD A CHANCE TO GO THROUGH IT.

25   AND LET'S SEE HOW MANY OF THESE THINGS WE CAN TAKE CARE OF.

1       SO, FIRST OF ALL -- WELL, I GUESS I'LL ASK -- I'LL

2  ASK COUNSEL.  DO YOU HAVE PARTICULAR MATTERS, A PARTICULAR

3  ORDER THAT YOU WANT TO ADDRESS THINGS?  OR DO YOU WANT TO

4  JUST GO THROUGH THE REPORT?

5       MR. MIRELL:  I GUESS FROM THE PERSPECTIVE OF

6  PLAINTIFF THERE IS A KIND OF THRESHOLD ISSUE THAT MAY MERIT

7  CONVERSATION.

8       WE HAVE BEEN ATTEMPTING TO ARRANGE A MEDIATION IN

9  THIS MATTER.

10      THE COURT:  GOOD THRESHOLD ISSUE.  I WAS -- I WAS

11  GOING TO ASK ABOUT THAT.

12      MR. MIRELL:  AND WE HAVE ACTUALLY OFFERED TO -- THE

13  TRIBOO DEFENDANTS AND THE PLAINTIFF HAD AGREED AT ONE POINT

14  TO ASK YOUR HONOR TO SERVE THAT ROLE.  THAT WAS REJECTED BY

15  OTHER DEFENDANTS.  BUT WE HAVE SUBSEQUENTLY AGREED THAT

16  RETIRED CALIFORNIA SUPREME COURT JUSTICE EDWARD PINELLI MIGHT

17  PROFITABLY SERVE THAT ROLE -- AMONG OTHER REASONS BECAUSE HE

18  IS FAMILIAR WITH MATTERS OF THIS NATURE AND ALSO BECAUSE HE

19  IS A NATIVE ITALIAN SPEAKER.  AND THERE ARE ITALIAN-LANGUAGE

20  DOCUMENTS IMPLICATED AND ITALIAN PARTIES IN THIS CASE.

21      AND HE HAS MADE HIMSELF AVAILABLE.  AND WE HAVE --

22  WE AND THE TRIBOO DEFENDANTS HAVE AGREED THAT -- TO USE HIM

23  AND TO TRY TO ENLIST HIS SERVICES NEXT WEEK.  HE IS AVAILABLE

24  ON THE 1ST, 2ND, AND 3RD.  MR. MANDELL HAS ADVISED US THAT

25  HIS PARTNER MR. POTEPAN IS UNAVAILABLE ON THE 2ND, BUT WE DO

8

1   NOT KNOW THAT HE IS UNAVAILABLE ON THE 1ST AND 3RD.  AND IT

2   SEEMS TO US THAT THOSE ARE -- THAT THAT IS A MATTER WHICH

3   REALLY COULD EXPEDITE THE ULTIMATE RESOLUTION OF THIS CASE.

4          AND I WANT TO RAISE IT BECAUSE I THINK THAT IN

5   TERMS OF SCHEDULING DEPOSITIONS, THAT IT MAKES ALL OF THE

6   SENSE IN THE WORLD TO ATTEMPT TO HAVE THIS MATTER MEDIATED

7   BEFORE ANY FURTHER DEPOSITIONS TAKE PLACE.

8          TWO HALF-DAY DEPOSITIONS I SHOULD NOTE TO THE COURT

9   HAVE ALREADY TAKEN PLACE -- THAT OF MR. WOLMAN, MS. BERRY'S

10  BUSINESS MANAGER, AND MS. WASSON, HER PUBLICIST.

11         AND -- BUT THERE ARE ANY NUMBER OF ADDITIONAL DAYS

12  OF DEPOSITIONS THAT ARE SCHEDULED.  AND WE BELIEVE THAT IT IS

13  VERY IMPORTANT AND IN THE INTEREST OF EFFICIENCY AND ECONOMY

14  TO HAVE THIS MATTER MEDIATED AS SOON AS POSSIBLE.  AND WE

15  BELIEVE THAT ALL OF THE NECESSARY DOCUMENTATION IS IN PLACE

16  FOR THERE TO BE A PRODUCTIVE MEDIATION WITHOUT WAITING FOR

17  ANY ADDITIONAL DISCOVERY RESPONSES OF ANY KIND ON EITHER

18  SIDE.  SO, THAT'S THE THRESHOLD MATTER I WANTED TO RAISE.

19         THE COURT:  OKAY.  FROM DEFENDANTS' PERSPECTIVE,

20  HOW --

21         MS. CHRISTA:  YOUR HONOR, I'M HAPPY TO SPEAK TO

22  THAT.

23         THE COURT:  THERE HASN'T BEEN ANY PRIOR MEDIATION?

24         MR. MIRELL:  THERE WAS -- THERE WAS A PRIOR

25  MEDIATION WITH RETIRED CALIFORNIA COURT OF APPEAL JUSTICE

9

1   JOHN SABROWSKI.  THAT, HOWEVER, OCCURRED A NUMBER OF MONTHS

2   AGO AND WAS PRIOR TO MS. CHRISTA'S INVOLVEMENT IN THE CASE

3   AND ALSO PRIOR TO A COMPLETE UNDERSTANDING OF THE NATURE OF

4   INSURANCE COVERAGE, IF ANY, WITH RESPECT TO THE PARTIES AND

5   WHETHER OR NOT THERE WAS YET AN ADDITIONAL PARTY WHO NEEDED

6   TO BE BROUGHT IN.

7           AND I THINK ALL OF -- THE MUTUAL BELIEF OF COUNSEL

8   -- AND MR. MANDELL CAN SPEAK TO THIS -- IS THAT A DIFFERENT

9   MEDIATOR IN LIGHT OF THE INFORMATION THAT WE HAVE RECEIVED

10  WOULD BE MORE LIKELY TO ACHIEVE AN APPROPRIATE RESULT.

11          ALSO, TOO, AS MS. CHRISTA HAS MENTIONED TO ME, THE

12  ABILITY OF A NATIVE ITALIAN SPEAKER TO SPEAK DIRECTLY TO

13  OTHER NATIVE ITALIAN SPEAKERS WHO REPRESENT BOTH THE TRIBOO

14  PARTIES AND THE TOYWATCH PARTIES IN ITALY IS, WE THINK,

15  EXTREMELY IMPORTANT.

16          AND, ALSO, TO THE EXTENT THAT WE'RE ATTEMPTING TO

17  CONDUCT THE MEDIATION ECONOMICALLY, IT MAY WELL BE POSSIBLE

18  FOR HIM -- JUSTICE PINELLI, THAT IS -- TO HAVE CONVERSATIONS

19  BY TELEPHONE WITH THE PARTIES EITHER DURING OR PRIOR TO A

20  FORMAL MEDIATION SESSION.

21          THE COURT:  OKAY.

22          IS THAT MR. MANDELL?

23          MR. MANDELL:  GOOD AFTERNOON, YOUR HONOR.

24          AND ONCE AGAIN, THANK YOU FOR AGREEING TO ASSIST

25  THE PARTIES IN THESE DISCOVERY DISPUTES.  WE SINCERELY

1  APPRECIATE IT.

2        THE COURT:  NO PROBLEM.

3        MR. MANDELL:  REGARDING THE MEDIATIONS, YOUR HONOR,

4  AT LEAST FROM TOYWATCH'S PERSPECTIVE, WE HAVE NO PROBLEMS

5  WITH JUSTICE SABROWSKI --

6        MR. MIRELL:  PINELLI.

7        MR. MANDELL:  EXCUSE ME?  OR JUSTICE PINELLI --

8        MR. MIRELL:  SORRY.

9        MR. MANDELL:  OUR ISSUES WITH A MEDIATION STEM FROM

10  I GUESS A NUMBER OF FACTORS -- FIRST OF ALL, OUR OWN

11  AVAILABILITY.  MY COLLEAGUE WHO WOULD NEED TO BE AT THE

12  DEPOSITION -- EXCUSE ME, AT THE MEDIATION IS NOT GOING TO BE

13  AVAILABLE JUNE 1ST, 2ND OR -- JULY 1ST, 2ND, OR 3RD.

14        AND FROM OUR PERSPECTIVE, THE REASON THAT THE LAST

15  MEDIATION WAS UNSUCCESSFUL IS BECAUSE WE DIDN'T HAVE MANY OF

16  THE SAME DOCUMENTS THAT WE STILL BELIEVE ARE OUT THERE BUT

17  WHICH WE DON'T HAVE.

18        I DISCUSSED THIS ISSUE WITH COUNSEL I WANT TO SAY

19  TWO DAYS AGO FOLLOWING A DEPOSITION.  WE WERE DISCUSSING SOME

20  OF THE TYPES OF DOCUMENTS WHICH WERE ADDRESSED IN OUR JOINT

21  STATEMENT.  PLAINTIFF'S COUNSEL ASKED ME SPECIFICALLY WHAT

22  KIND OF DOCUMENTS DO YOU WANT.  AND I SAID THAT, YOU KNOW, IN

23  THE DEPOSITIONS PLAINTIFF'S MANAGER AND HER PUBLICIST BOTH

24  SAID THAT SHE RECEIVES GIFTS FROM PEOPLE, SOME OF WHICH SHE

25  KEEPS HERSELF, A MAJORITY OF WHICH SHE GIVES TO CHARITY.  AND

11

1    I WANTED TO KNOW, YOU KNOW, ARE THERE COMMUNICATIONS

2    SURROUNDING, YOU KNOW, WHERE THESE GIFTS COME FROM.

3             ONE OF THE THINGS THAT PLAINTIFF HAS TO SHOW TO

4    PROVE THAT WE VIOLATED HER RIGHT OF PUBLICITY IS THAT WE USED

5    HER IMAGE WITHOUT HER CONSENT.  NOW, IF SHE HAS LONG-STANDING

6    RELATIONSHIPS WITH PEOPLE WHO ARE GIVING HER GIFTS, AND SHE

7    KNOWS THAT THESE INDIVIDUALS WORK FOR MARKETING COMPANIES,

8    THERE MAY BE AT THE VERY LEAST AN IMPLIED CONSENT TO HAVE HER

9    -- HER IMAGE -- YOU KNOW, HER PHOTO -- SHE KNOWS THAT WHEN

10   SHE'S GETTING THIS MERCHANDISE THAT SHE'S -- AND SHE WEARS IT

11   OUT IN PUBLIC, SHE'S GOING TO BE PHOTOGRAPHED BY PAPARAZZI.

12   AND SHE KNOWS THAT THE PERSON GIVING IT TO HER PLAYS A ROLE

13   WITH MARKETING COMPANIES.  YOU PUT THAT TOGETHER, THERE MAY

14   BE AN IMPLIED -- AT LEAST AN IMPLIED CONSENT THAT IF SHE

15   ACCEPTS THE MERCHANDISE, SHE'S PLAYING A MARKETING ROLE AND,

16   YOU KNOW, IS HELPING TO SELL THE VERY MERCHANDISE THAT SHE'S

17   BEING GIVEN.

18            I WANTED COMMUNICATIONS BETWEEN MS. BERRY OR HER

19   REPRESENTATIVES AND THE PEOPLE GIVING THOSE GIFTS TO MS.

20   GARRY -- MS. BERRY.

21            AT THAT TIME IT SOUNDED AS THOUGH PLAINTIFF'S

22   MANAGER, WHO IS REPRESENTED AS A 30(B)(6) IN THIS CASE AS TO

23   ALL SUBJECTS THAT WOULD BE RELEVANT, HE DIDN'T KNOW ABOUT ANY

24   OF THESE SORTS OF COMMUNICATIONS BETWEEN HALLE BERRY AND THE

25   PEOPLE WHO SHE RECEIVES GIFTS FROM.

1    HER PUBLICIST WAS NOT ABLE TO DESCRIBE ANY OF THESE

2    COMMUNICATIONS OR WHERE SHE RECEIVES GIFTS FROM.  AND WHEN I

3    ASKED MS. -- THE PLAINTIFF'S COUNSEL, I SAID THIS IS

4    SOMETHING THAT WE DON'T -- NOT ONLY THINK IS IMPORTANT FOR

5    LIABILITY PURPOSES, BUT WE THINK THAT THERE'S A CHANCE THAT

6    THIS COULD DRAMATICALLY DECREASE DAMAGES IN THIS CASE BECAUSE

7    THERE'S A CHANCE THAT THERE COULD BE NOT ONLY IMPLIED

8    CONSENT.  THERE COULD BE EXPRESS CONSENT TO ACCEPT THESE

9    GIFTS IN EXCHANGE FOR WEARING THEM OUT IN PUBLIC AND BEING

10   PHOTOGRAPHED WITH THEM.

11   WE'VE ONLY BEEN GIVEN ENDORSEMENT AGREEMENT WHERE,

12   YOU KNOW, I GUESS HALLE BERRY IS A SPOKESPERSON OR WHERE --

13   THAT ARE WORTH HUNDREDS OF THOUSANDS OF DOLLARS OR MILLIONS

14   OF DOLLARS.  WE HAVEN'T BEEN GIVEN ENDORSEMENT AGREEMENTS

15   WHERE SHE'S RECEIVING MERCHANDISE IN EXCHANGE FOR WEARING IT

16   AND PLAYING A MARKETING ROLE.

17   AND WHEN I ASKED FOR THESE COMMUNICATIONS, WHICH

18   MAY INCLUDE THOSE SORTS OF AGREEMENTS OR REFER TO THOSE SORTS

19   OF AGREEMENTS, SMALLER ENDORSEMENT AGREEMENTS, I WAS TOLD

20   THAT PLAINTIFF'S COUNSEL -- AND I COULD BE WRONG, BUT SPOKE

21   WITH THE PLAINTIFF, ALL OF HER REPRESENTATIVES, AND THAT

22   THOSE COMMUNICATIONS DO NOT EXIST -- THAT THERE ARE NO

23   COMMUNICATIONS WHERE HALLE BERRY IS DIRECT -- SOLICITING

24   MERCHANDISE DIRECTLY FROM THE PEOPLE GIVING IT TO HER.

25   I SAID, WELL, IF SHE'S GETTING -- IF SHE'S

1   RECEIVING INNUMERABLE GIFTS AND SHE'S GIVING THEM TO CHARITY,

2   WHERE ARE THEY COMING FROM.  I DIDN'T RECEIVE AN ANSWER THAT

3   I FEEL COMFORTABLE WITH.  I THINK ONE OF THEM WAS THAT MAYBE

4   PEOPLE LOOK UP HER ADDRESS AND MAIL THEM TO HER.

5         IN ANY EVENT, YESTERDAY I CONTACTED SOMEBODY WHO I

6   KNOW GIVES GIFTS TO MS. BERRY.  AND I INDICATED THAT WE WOULD

7   LIKE TO AMONG OTHER THINGS SET UP A DEPOSITION, AND THAT I

8   WOULD LIKE ANY COMMUNICATIONS BETWEEN HER AND MS. BERRY

9   REGARDING THE GIFTS THAT SHE RECEIVES.  SHE SENT ME -- I WANT

10  TO SAY TEN PAGES OR MORE OF TEXT MESSAGES BETWEEN MS. BERRY

11  AND HERSELF IN WHICH MS. BERRY IS BEING OFFERED GIFTS, IN

12  WHICH MS. BERRY IS SOLICITING GIFTS, IN WHICH MS. BERRY

13  ACKNOWLEDGES THAT SHE HAS BEEN PHOTOGRAPHED WITH GIFTS AND

14  SAYS SOMETHING LIKE, YAY, I'VE BEEN PHOTOGRAPHED WEARING THIS

15  GIFT.  WHERE SHE AFTER HAVING RECEIVED A GIFT SHE'S ASKED

16  WOULD YOU BE A FAN FOR THIS PERSON'S WEBSITE OR FOR THIS

17  PERSON'S MERCHANDISE.  SHE SAYS, YES, I WILL BE A FAN.

18         THIS IS A TIP OF THE ICEBERG.  THIS IS SOMETHING

19  THAT WE'VE RECEIVED, YOU KNOW, JUST YESTERDAY.  I HAVEN'T

20  SHOWN IT TO COUNSEL YET.  I JUST RECEIVED IT.

21         BUT -- AND, SO, I WANT TO BE FAIR TO EVERYONE HERE

22  THAT -- BUT, AGAIN, YOU KNOW, THIS IS SOMETHING -- AND THE

23  TIMEFRAME THAT THIS COVERS WAS, LIKE, I WANT TO SAY FEBRUARY

24  OF THIS YEAR MAYBE TO MAY THIS YEAR AFTER THE LAWSUIT WAS

25  FILED.  I WANT TO SEE TEXT MESSAGES BETWEEN THIS INDIVIDUAL

1  AND HALLE BERRY SURROUNDING THE TIME WHEN THE WATCH WAS GIVEN

2  TO MS. BERRY.  I WANT TO SEE TEXT MESSAGES BETWEEN MS. BERRY

3  AND OTHER PEOPLE GIVING HER GIFTS.

4          THESE ARE CRUCIAL DOCUMENTS WHICH COULD

5  DRAMATICALLY LOWER MS. BERRY'S DAMAGES, IF ANY.  AND IT COULD

6  ALSO SUPPORT OUR THEORY THAT MS. BERRY HAS GIVEN CONSENT,

7  EITHER EXPRESS OR IMPLIED.

8          SO, I THINK THAT TO RUSH INTO A MEDIATION WHEN WE

9  HAVE NOT BEEN GIVEN THESE DOCUMENTS IS FOOLHEARTED, QUITE

10 FRANKLY.

11          I THINK THAT WE EITHER NEED TO -- AND I MIGHT -- MY

12 CONCERN IS THAT GIVEN THE FACT THAT MANY OF THESE

13 COMMUNICATIONS APPEAR TO BE TEXT MESSAGES, THAT, A, THERE

14 COULD BE A SPOLIATION -- YOU KNOW, A SPOLIATION OF THE

15 EVIDENCE PROBLEM.  I THINK THAT THAT IS ONE REASON WHY MS.

16 BERRY'S DEPOSITION NEEDS TO BE MOVED FORWARD BECAUSE WE'VE

17 INTERVIEWED HER MANAGER ALREADY.  DIDN'T KNOW ANYTHING ABOUT

18 IT.  HER PUBLICIST ALREADY.  DIDN'T KNOW ANYTHING ABOUT IT.

19 I DON'T BELIEVE THAT PLAINTIFF'S COUNSEL KNEW ANYTHING ABOUT

20 THESE COMMUNICATIONS.  IT SEEMS LIKE BERRY AND MAYBE MS.

21 CARPENTER AND WHOEVER ELSE -- I DON'T KNOW WHO ELSE SHE'S

22 RECEIVING GIFTS FROM -- BUT MS. BERRY DOES.  SHE'S THE ONLY

23 ONE WHO DOES.  AND BEFORE --

24          THE COURT:  OKAY.

25          MR. MANDELL:  -- WE RUSH INTO A MEDIATION WE THINK

1   THAT WE NEED TO DO EVERYTHING WE CAN TO OBTAIN THESE SORTS OF

2   COMMUNICATIONS AND TO, YOU KNOW, TO DEPOSE MS. BERRY IF IT

3   LOOKS LIKE, YOU KNOW, WE'RE NOT BEING TOLD WHO MS. BERRY

4   RECEIVES THESE ITEMS FROM AND, YOU KNOW, GIVEN THE

5   COMMUNICATIONS SURROUNDING THE CIRCUMSTANCES OF HER BEING

6   GIVEN THESE ITEMS.

7          AND I GUESS THAT THAT IS OUR POSITION WITH RESPECT

8   TO MEDIATION.  WE HAVE NO OBJECTION TO IT, BUT WE FEEL THAT

9   THERE ARE CRITICAL DOCUMENTS OUT THERE AND POSSIBLY

10  DEPOSITION TESTIMONY IF IT'S GOING TO BE CRITICAL THAT NEEDS

11  TO BE PART OF THE RECORD OR INCLUDED IN ANY MEANINGFUL

12  MEDIATION AT THIS POINT.

13         AND I BROUGHT THESE COMMUNICATIONS WITH ME.  I CAN

14  PROVIDE COPIES TO COUNSEL BECAUSE I DON'T EXPECT THAT THEY

15  HAVE SEEN THEM YET, JUDGING BY THEIR REACTION.  AND I KNOW

16  THE COURT HASN'T AS WELL.

17         THE COURT:  YES.  OKAY.

18         DID YOU WANT TO ADDRESS THAT, MR. MIRELL?

19         MR. MIRELL:  YES.

20         WELL, FIRST, NEEDLESS TO SAY, I AM CONCERNED -- LET

21  ME PUT IT THAT WAY -- ABOUT THE FORTHCOMINGNESS OR

22  NON-FORTHCOMINGNESS OF COUNSEL WITH RESPECT TO DOCUMENTS THAT

23  THEY MAY HAVE HAD FOR SOME PERIOD OF TIME OR CONVERSATIONS

24  THAT THEY MAY HAVE HAD FOR SOME PERIOD OF TIME PRIOR TO

25  TODAY.

1          BUT I DON'T WANT TO LOSE SIGHT OF THE BALL HERE.

2     THE BALL HERE IS ABOUT A SPECIFIC SET OF WEBSITE

3     ADVERTISEMENTS AND SOCIAL MEDIA ADVERTISEMENTS ADVERTISING A

4     PARTICULAR PRODUCT AND USING THE NAME AND IMAGE OF MY CLIENT

5     WITHOUT HER AUTHORIZATION.  AND WHATEVER COMMUNICATIONS MAY

6     HAVE BEEN HAD SUBSEQUENT TO THE APPEARANCE OF THESE

7     ADVERTISEMENTS AND SUBSEQUENT TO THE LAWSUIT THAT WAS BROUGHT

8     OVER THEM, I BELIEVE COULD BE TANGENTIALLY RELEVANT BUT

9     CERTAINLY DO NOT CONSTITUTE ANY REASON FOR WITHHOLDING

10    PROCEEDING WITH A MEDIATION.

11          AND AS WE SAID IN THE PAPERS THAT WE SUBMITTED TO

12    THE COURT ON PAGE 7 -- AND I'D JUST LIKE TO READ THESE TWO

13    SENTENCES --

14          "PLAINTIFF'S ACCEPTANCE OR USE OF SUCH GIFTS IN NO

15          WAY CONSTITUTES PLAINTIFF'S CONSENT OR

16          AUTHORIZATION TO THE DESIGNER TO USE IMAGES OF

17          PLAINTIFF WEARING THE ITEMS IN THE DESIGNER'S

18          MARKETING, ADVERTISING, OR PROMOTIONAL MATERIALS.

19          IF DEFENDANTS CONTEND OTHERWISE, THAT IS A LEGAL

20          ARGUMENT THEY MAY ATTEMPT TO MAKE.  AND NO FURTHER

21          DISCOVERY IS NECESSARY OR APPROPRIATE."

22          AND I BELIEVE THAT THAT'S -- THAT ARGUMENT THAT MR.

23    MANDELL WANTS TO MAKE ABOUT IMPLIED CONSENT IS AN ARGUMENT

24    THAT HE'S FREE TO MAKE BASED UPON THE RECORD AS IT EXISTS.

25          HE HAS SUBPOENAED MULTIPLE ENTITIES WHO POSTED MS.

1    BERRY'S PHOTOGRAPH ON THEIR WEBSITES WEARING THEIR CLOTHES OR

2    OTHER ACCESSORIES AND SUBPOENAED RECORDS FROM THOSE ENTITIES.

3    AND THOSE RECORDS REFLECT NOTHING OF MS. BERRY'S CONSENT.

4    AND, IN FACT, BY SENDING THOSE SUBPOENAS MR. MANDELL ALERTED

5    US -- AND WE THANK HIM FOR IT -- TWO ADDITIONAL UNAUTHORIZED

6    USAGES OF MS. BERRY'S NAME AND IMAGE.  AND WE HAVE

7    SUBSEQUENTLY SENT CEASE AND DESIST LETTERS AND COMMUNICATED

8    WITH THOSE PARTIES TO TAKE DOWN THOSE IMAGES BECAUSE THEY

9    ARE, LIKE TOYWATCH'S IMAGES, UNAUTHORIZED.

10            SO, I REALLY DON'T SEE HOW EVEN IF THE DOCUMENTS

11   ARE AS REPRESENTED BY MR. MANDELL, HOW THAT REALLY DOES CUT

12   AGAINST THE PROPRIETY OF CONDUCTING A MEDIATION NOW.

13            THE COURT:  OKAY.

14            AND DID YOU HAVE ANYTHING YOU WANTED TO ADD ON

15   THAT, MS. CHRISTA?  ANYTHING YOU WANTED --

16            MS. CHRISTA OR MR. MANDELL.

17            (DEFENSE COUNSEL CONFERRING.)

18            MR. MANDELL:  YOUR HONOR, JUST TWO POINTS THAT I

19   WANT TO ADDRESS.

20            FIRST, I KNOW THAT MR. MIRELL -- I DON'T KNOW IF HE

21   AT LEAST QUESTIONED WHETHER OUR -- YOU KNOW, WHETHER WE HAVE

22   BEEN FORTHCOMING AS FAR AS OUR DOCUMENTS.  I WANT TO ASSURE

23   THE COURT THAT WE HAVE BEEN, AND THAT WE ONLY RECEIVED THESE

24   COMMUNICATIONS YESTERDAY.

25            AND I WOULD ALSO -- I'M NOT TRYING TO IMPLY

18

1    ANYTHING.  I DON'T KNOW WHAT THIS MEANS, BUT MS. CARPENTER,

2    WHO PROVIDED THESE COMMUNICATIONS TO ME YESTERDAY, GAVE ME A

3    CALL YESTERDAY AND SAID THAT MR. MIRELL GAVE HER A CALL AND

4    SAID THAT IF SHE WOULD GO OVER TO HIS OFFICE AND SIGN A

5    DOCUMENT, SHE WOULD NOT HAVE TO SIT FOR A DEPOSITION.

6                THE COURT:  THAT DOESN'T MEAN ANYTHING.

7                MR. MANDELL:  IT DOESN'T BUT --

8                THE COURT:  YES.  OKAY.  LET'S -- LET'S DEAL WITH

9    THIS IN TWO WAYS.

10                I THINK WE MAY HAVE GONE SOMEWHAT ASTRAY IN TERMS

11   OF WHAT -- WHAT I HAD ORDERED FOR THE PRODUCTION AND WHAT --

12   AND I KNOW THAT YOU HAD SOME DISPUTES ABOUT PRECISELY HOW I

13   WOULD DEFINE THE TRADE-OUT AGREEMENTS THAT WE TALKED ABOUT

14   AND WHAT MIGHT NEED TO BE PRODUCED -- COMMUNICATIONS RELATING

15   TO THOSE AGREEMENTS.

16                I THINK WE CAN RESOLVE THAT BECAUSE I HAVE -- I

17   THOUGHT THAT I -- AND I INTENDED TO DRAW FAIRLY CLEAR, ALBEIT

18   ARGUABLY SOMEWHAT ARBITRARY AS WE SAID THE LAST TIME -- JUST

19   BY NECESSITY I'M DRAWING A LINE ON WHERE I THINK THE

20   DISCOVERY LINE IS DRAWN HERE.

21                THE KINDS OF COMMUNICATIONS THAT IT SOUNDS LIKE

22   YOU'RE TALKING ABOUT RELATING TO GIFTS THAT MAY HAVE BEEN

23   PROVIDED AND WHETHER THERE'S SOME UNDERSTANDING BY MS. BERRY

24   THAT WHAT IT MEANS WHEN SHE GETS THOSE GIFTS, I SUPPOSE IT'S

25   POSSIBLE THAT THERE ARE -- THERE ARE COMMUNICATIONS ON THAT

19

1   SUBJECT.

2           TO MY -- TO MY VIEW THOSE DO NOT -- I'M NOT SAYING

3   THAT THERE'S NOT A POSSIBILITY THAT THEY COULD BE

4   DISCOVERABLE.  IT SOUNDS LIKE YOU HAVE DISCOVERED SOME.  AND

5   THAT'S FINE.  THEY CAN BE USED HOWEVER THEY COULD BE USED.

6   BUT IN TERMS OF WHAT I DIRECTED FOR PRODUCTION, I WAS TALKING

7   ABOUT UNDERSTANDINGS, CLEAR UNDERSTANDINGS THAT SOMETHING OF

8   VALUE WAS BEING EXCHANGED WITH MS. BERRY BY AGREEMENT THAT

9   SHE WOULD WEAR THAT OR USE THAT PRODUCT ON SOME PARTICULAR

10  OCCASION.

11          THOSE KINDS OF AGREEMENTS THAT I WOULD CONSIDER TO

12  BE TRADE-OUT AGREEMENTS I THINK I PUSHED THE ENVELOPE.  YOU

13  AND MS. CHRISTA PERSUADED ME TO PUSH THE ENVELOPE BECAUSE YOU

14  WOULD HAVE SOME THEORY RELATED TO DAMAGES THAT THOSE MIGHT

15  ARGUABLY ADVANCE.

16          AND THOSE I DID ORDER TO BE PRODUCED.  AND AS I

17  UNDERSTAND THE REPORT, COUNSEL IS REPRESENTING THAT THEY HAVE

18  PRODUCED THOSE AGREEMENTS.

19          NOW, BEYOND THAT, YOU HAD AN ISSUE ABOUT WHETHER

20  THERE SHOULD BE COMMUNICATIONS -- THAT MAYBE THERE WAS A

21  DEFINITIONAL ISSUE ABOUT WHAT COMMUNICATIONS WOULD CONSTITUTE

22  SUCH AGREEMENTS.

23          AND I'LL TELL YOU RIGHT NOW THAT I'M GOING TO DRAW

24  THE LINE AT DOCUMENTS THAT EVIDENCE, CONSTITUTE, OR REFLECT

25  AGREEMENTS TO USE -- TO USE OR WEAR A PRODUCT IN EXCHANGE FOR

1  SOMETHING OF VALUE.  SO, THAT DOES NOT INCLUDE COMMUNICATIONS

2  THAT RELATE TO, REGARD, OR REFER TO BECAUSE THAT GETS MUCH

3  BROADER.  AND I THINK WE'VE PUSHED THE ENVELOPE FAR ENOUGH

4  WITH DEFINING WHAT A TRADE-OUT AGREEMENT WAS.

5          WITHOUT KNOWING SPECIFICALLY THE CONTEXT -- AND I

6  DON'T THINK IT'S FAIR TO DO THIS TODAY BECAUSE IT'S SOMETHING

7  THAT'S JUST BEEN PRESENTED.  WITHOUT KNOWING THE CONTEXT OF

8  THE KINDS OF COMMUNICATIONS THAT YOU'VE REFERRED TO TODAY, I

9  CAN'T TELL YOU WHETHER THERE MIGHT BE SOME OTHER THEORY THAT

10  WOULD JUSTIFY A BROADER DISCOVERY OF THOSE.  THERE MIGHT BE.

11          I'M NOT -- I'M NOT SOLD ON THE IDEA THAT THE THEORY

12  IS THAT IF THERE'S SOME PRACTICE OF RECEIVING GIFTS, THAT

13  THAT COULD BE EVIDENCE OF IMPLIED CONSENT IN THIS CASE.  I

14  DON'T -- I WOULD NOT BE INCLINED TO OPEN DISCOVERY TO A BROAD

15  PRACTICE OF WHAT GIFTS ARE GIVEN AND WHERE THEY COME FROM.  I

16  JUST -- I'M NOT SEEING THAT AS SUFFICIENTLY RELEVANT FOR

17  DISCOVERY PURPOSES IN THIS CASE.

18          SO, WHAT I CAN TELL YOU -- THIS IS IN TERMS OF THE

19  DISPUTE THAT YOU HAVE ON PAGE 4, NUMBER 1, ABOUT THE SCOPE OF

20  COMMUNICATIONS THAT HAVE TO BE PRODUCED.  I'LL SAY YOU SHOULD

21  -- YOU SHOULD PRODUCE COMMUNICATIONS THAT EVIDENCE,

22  CONSTITUTE, OR REFLECT THE AGREEMENTS TO RECEIVE SOMETHING IN

23  VALUE IN EXCHANGE FOR WEARING A PRODUCT OR USING A PRODUCT.

24          IF YOU NEED TO DO A CONFIRMATION THAT THERE ARE NO

25  SUCH COMMUNICATIONS, THAT SHOULD BE CONFIRMED.  AND IF THERE

1  ARE ANY, THEY SHOULD BE PRODUCED.

2        BUT JUST BACKING UP TO THE MEDIATION ISSUE, ANY --

3  AND THIS IS NOT EVEN AN EARLY MEDIATION BECAUSE WE'RE WELL

4  INTO THE -- WE'RE ALMOST AT THE END -- ANY MEDIATION IS GOING

5  TO HAVE BEEN -- IS GOING TO BY NECESSITY BE CONDUCTED WITHOUT

6  A PERFECT UNIVERSE OF KNOWLEDGE.  AND PART OF THAT IS GOING

7  TO BE THE PRODUCT OF JUST WHAT I'VE JUST DONE, WHICH IS SAY

8  THAT I DON'T SEE DISCOVERY IN THIS CASE AS INCLUDING A BROAD

9  INQUIRY INTO THE PRACTICE OF GIFT GIVING OR OF GIFT GIVING TO

10 MS. BERRY.  SO, THAT'S NOT GOING TO BE THE SCOPE OF

11 DISCOVERY.

12        BUT EVEN WITHIN THE AREA OF WHAT I SAID SHOULD BE

13 DISCOVERED, I UNDERSTAND IT'S NOT GOING TO BE PERFECT.  AND

14 IT SEEMS TO ME TO BE TRULY UNFORTUNATE IF AN OPPORTUNITY TO

15 DO A MEDIATION BEFORE THE ADDITIONAL EXPENSE OF DEPOSITIONS

16 IN THIS CASE IS LOST BECAUSE YOU DON'T HAVE EVERYTHING YOU

17 WOULD LIKE.

18        MR. MANDELL:  YOUR HONOR, I AGREE WITH YOU THAT WE

19 WOULD CERTAINLY LIKE TO AVOID UNNECESSARY COSTS.

20        AND I GUESS THAT JUST FOR A POINT OF CLARIFICATION,

21 IN SOME OF THESE TEXT MESSAGES, WHICH I'LL POINT -- I'LL PASS

22 AROUND, THERE ARE INSTANCES WHERE MS. BERRY HAS RECEIVED AN

23 ITEM OF MERCHANDISE.  AND, YOU KNOW, THEREAFTER AT LEAST SHE

24 HAS BEEN ASKED WHETHER SHE AGREES THAT THE PEOPLE WHO GAVE

25 HER THE MERCHANDISE CAN SAY THAT SHE'S A FAN OF THEIR

1    MERCHANDISE.  I MEAN, WE SEE THAT AS AN ENDORSEMENT

2    AGREEMENT.  WE THINK THAT THERE COULD BE OTHER TEXT MESSAGES

3    OUT THERE WITH SIMILAR SORTS OF ENDORSEMENT AGREEMENTS WHERE

4    MS. BERRY SAYS THAT, YOU KNOW, IT'S OKAY.  THEY CAN USE HER

5    NAME ON A WEBSITE OR MAYBE EVEN HER IMAGE OR PHOTOGRAPH ON A

6    WEBSITE SAYING THAT SHE IS A FAN OF THEIR PRODUCT IN EXCHANGE

7    FOR RECEIVING THAT PRODUCT.

8              IS YOUR HONOR ORDERING THOSE SORTS OF

9    COMMUNICATIONS TO BE PRODUCED WHERE -- WHERE I'VE GOT A TEXT

10   MESSAGE.  I'M -- YOU KNOW, IF I'M GOING TO BE GIVING A GIFT

11   TO MS. BERRY -- AND I'M USING "GIFT" MAYBE NOT IN THE -- I

12   ACTUALLY SHOULD MAYBE SAY I'M GIVING HER MERCHANDISE FOR

13   WHICH SHE DOES NOT HAVE TO PAY.  AND I SAY, LOOK, MS. BERRY,

14   I WILL GIVE YOU THIS.  CAN THEY -- YOU KNOW, CAN THE PEOPLE

15   WHO MADE THIS PIECE OF MERCHANDISE SAY THAT YOU'RE A FAN OF

16   THEIR MERCHANDISE ON THE WEBSITE.  IF THEY GET A PHOTOGRAPH

17   OF YOU WEARING THAT MERCHANDISE, CAN THEY USE THAT ON THEIR

18   WEBSITE, AND SHE SAYS, YES, I MEAN, THAT'S, YOU KNOW, IN MY

19   VIEW --

20             THE COURT:  WELL, IF -- YES.

21             MR. MANDELL:  -- AN ENDORSEMENT AGREEMENT.

22             THE COURT:  OKAY.  IF THERE -- IF THERE IS A

23   COMMUNICATION THAT SPECIFICALLY AGREES OR REFLECTS OR

24   CONSTITUTES AN AGREEMENT THAT IN -- THAT IN RETURN FOR A

25   PRODUCT BEING DELIVERED TO HER THAT SHE WILL ENDORSE THAT

 1   PRODUCT --

 2            MR. MANDELL:  OKAY.

 3            THE COURT: -- THAT'S AN ENDORSEMENT AGREEMENT.

 4            AND IF THERE'S BEEN SOME MISUNDERSTANDING ABOUT

 5   WHETHER THAT FALLS WITHIN A TRADE-OUT OR AN ENDORSEMENT

 6   AGREEMENT, I THINK WE CAN CLARIFY THAT IF THERE IS A

 7   COMMUNICATION THAT SAYS, YES, IN EXCHANGE -- I MEAN, IT

 8   DOESN'T HAVE TO SAY IT IN THIS MANY WORDS, BUT IF IT REFLECTS

 9   THAT KIND OF AN AGREEMENT, THAT THAT WOULD BE -- THAT THAT

10   WOULD BE PRODUCED.

11            WHAT I'M HEARING -- I GUESS IT'S MAYBE YOUR

12   TIP-OF-THE-ICEBERG COMMENT -- IF WHAT THE SUGGESTION IS IS

13   THAT THIS IS -- BECAUSE -- AND THIS IS THE ARGUMENT THAT'S IN

14   THE PAPERS, THAT BECAUSE IT MAY BE THAT PEOPLE ASSOCIATED

15   WITH MARKETING OF PRODUCTS GIVE GIFTS TO MS. BERRY, THAT THAT

16   PRACTICE SOMEHOW COULD IMPLICITLY LEAD TO AN IMPLICIT

17   UNDERSTANDING THAT THIS IS ALWAYS AN ENDORSEMENT CONTRACT OR

18   SIMILAR ENOUGH TO AN ENDORSEMENT CONTRACT THAT IT'S RELEVANT.

19   AND THAT'S WHAT I'M SIMPLY -- I'M NOT GOING TO EXPAND

20   DISCOVERY TO INCLUDE THAT.

21            MR. MANDELL:  I UNDERSTAND, YOUR HONOR.

22            I'M WONDERING IF IT WOULD BE HELPFUL FOR ME TO PASS

23   AROUND WHAT I RECEIVED YESTERDAY FROM MS. CARPENTER.

24            THE COURT:  WELL, YOU CERTAINLY NEED TO GIVE IT TO

25   MR. MIRELL.

```
 1            MR. MANDELL: I WILL.

 2            MR. MIRELL:  CERTAINLY.

 3            MR. MANDELL:  OF COURSE.

 4            THE COURT:  AND -- BUT --

 5            MS. CHRISTA:  AND TO ME.

 6            THE COURT:  AND TO MS. CHRISTA, YES.

 7            MS. CHRISTA:  AND I DON'T KNOW WHY WE DIDN'T GET IT

 8    YESTERDAY BECAUSE IT WOULD HAVE ENABLED ALL OF US TO BE

 9    BETTER PREPARED FOR YOU, YOUR HONOR.

10            THE COURT:  YES.  FRANKLY, I DON'T NEED TO SEE IT

11    TODAY BECAUSE I'M NOT GOING TO ADDRESS SPECIFIC DOCUMENTS

12    THAT WE'RE JUST LOOKING AT FOR THE FIRST TIME.  I MEAN, I

13    UNDERSTAND THE -- I UNDERSTAND THE ISSUE.  AND AS I SAID, I'M

14    NOT SAYING THAT THERE'S NOT SOME POSSIBLE ADDITIONAL THEORY

15    OF DISCOVERABILITY.  I'M JUST NOT -- IT HASN'T BEEN

16    ARTICULATED TO ME.

17            MR. MANDELL:  I DO HAVE ONE QUESTION ABOUT YOUR

18    HONOR'S DEFINITION OF A TRADE-OUT.

19            THIS IS JUST FROM MY NOTES.  SO, IT MAY NOT BE --

20    IT SOUNDS LIKE THE COURT SAID WHERE THERE'S AN UNDERSTANDING

21    THAT SOMETHING OF VALUE IS BEING EXCHANGED BY AGREEMENT THAT,

22    YOU KNOW, SHE WOULD WEAR OR USE THAT PRODUCT ON A PARTICULAR

23    OCCASION.

24            MY QUESTION IS WITH RESPECT TO THE TERM "A

25    PARTICULAR OCCASION," WHAT DOES YOUR HONOR MEAN BY THAT
```

1   EXACTLY?

2           THE COURT:  WELL, I GUESS IT'S KIND OF WHAT WE WERE

3   TALKING ABOUT THE LAST TIME, THAT IF IT'S THE DRESS TO WEAR

4   ON THE RED CARPET AT THE OSCARS, AND THAT'S THE UNDERSTANDING

5   THAT SHE'LL WEAR THAT DRESS THEN, AND THAT -- AND SHE KEEPS

6   THE DRESS --

7           MR. MANDELL:  OKAY.  WHAT ABOUT --

8           THE COURT: -- THAT WE UNDERSTOOD TO BE -- THAT'S

9   WHAT I UNDERSTOOD TO BE A TRADE-OUT.

10          MR. MANDELL:  WHAT ABOUT IF THERE IS A, YOU KNOW,

11  AN UNDERSTANDING THAT SHE WILL ACCEPT THE PIECE OF

12  MERCHANDISE AND, YOU KNOW, WEAR IT WHERE PAPARAZZI ARE LIKELY

13  TO BE, SUCH AS, FOR EXAMPLE, HER RUN/WALK CHARITY EVENT WHICH

14  SHE HOLDS ANNUALLY, OR, YOU KNOW, AS IN THIS CASE TO A

15  PUMPKIN PATCH WHERE THERE'S LIKELY TO BE HORDES OF PAPARAZZI,

16  IF SHE, YOU KNOW, ACCEPTS A PIECE OF MERCHANDISE WITH THE

17  UNDERSTANDING THAT SHE WILL WEAR THAT MERCHANDISE WHERE SHE

18  WILL BE PHOTOGRAPHED.  BECAUSE THOSE --

19          THE COURT:  IF THERE IS A DOCUMENTED AGREEMENT THAT

20  SHE HAS ACCEPTED -- IF THERE IS A DOCUMENT REFLECTING,

21  CONSTITUTING, OR EVIDENCING AN AGREEMENT TO ACCEPT A PIECE --

22  A PRODUCT IN EXCHANGE FOR WEARING THAT PRODUCT IN A

23  PARTICULAR CONTEXT, THEN, I WOULD CONSIDER THAT TO BE A

24  TRADE-OUT.

25          BUT WE HAD A VERY LIMITED TIME PERIOD -- A MUCH

1    MORE LIMITED TIME PERIOD FOR THAT.

2            MR. MANDELL:  UH-HUM.

3            THE COURT:  AND I'M NOT PREPARED TO HAVE THAT

4    INCLUDE ANY COMMUNICATION REFERRING TO THAT.  THAT WOULD JUST

5    -- TO ME THAT WOULD MAKE IT A COMPLETELY OVERBURDENSOME KIND

6    OF SEARCH.

7            BUT THAT KIND OF AN AGREEMENT, IF IT EXISTS, DOES

8    SEEM TO ME TO BE -- AND I'M REPEATING WHAT I SAID LAST TIME

9    -- TO BE ARGUABLY RELEVANT FOR YOUR PURPOSES OF COUNTERING

10   THE PLAINTIFF'S DAMAGES THEORY.

11           MR. MANDELL:  YOUR HONOR --

12           THE COURT:  I DO -- I DO SEE THAT.

13           MR. MANDELL:  AND, YOUR HONOR, I HAVE ONE MORE

14   QUESTION OR POINT THAT I'D LIKE TO MAKE WITH RESPECT TO YOUR

15   HONOR'S INCLINATION NOT TO EXTEND THE DEFINITION -- OR FOR

16   THE TYPES OF COMMUNICATIONS THAT NEED TO BE PRODUCED -- GOES

17   BEYOND OR TO INCLUDE COMMUNICATIONS REFERRING TO --

18           THE COURT:  UH-HUM.

19           MR. MANDELL: -- REGARDING.  YOU KNOW, MY

20   UNDERSTANDING IS THAT MANY OF THESE SMALLER TYPE TRADE-OUT

21   AGREEMENTS ARE GOING TO BE ORAL IN NATURE.  AND, THEREFORE,

22   COMMUNICATIONS -- AND THESE TEXT MESSAGES, YOU KNOW,

23   REFERRING TO THOSE MAY BE THE ONLY EVIDENCE THAT THEY EXIST.

24           AND IF THE PLAINTIFF IS NOT ORDERED TO PRODUCE AT

25   LEAST TEXT MESSAGES OR EMAILS, YOU KNOW, REFERRING TO THOSE

1   SORTS OF AGREEMENTS, WE MAY NOT HAVE EVIDENCE OF SOME OF

2   THESE VERY SMALL AND -- ENDORSEMENT AGREEMENTS WHICH WE FEEL

3   ARE MUCH MORE LIKE WHAT'S ALLEGED TO HAVE HAPPENED IN THIS

4   CASE THAN THE LARGE-SCALE ENDORSEMENT AGREEMENTS THAT WE

5   RECEIVED IN THE PAST.

6           THE COURT:  AND I UNDERSTAND THAT THAT'S THE THEORY

7   ON WHICH --

8           MR. MANDELL:  OUR DAMAGES THEORY.

9           THE COURT: -- DISCOVERY -- YES.  AND THAT WAS

10  PERSUASIVE TO ME THAT YOU NEEDED TO HAVE SOME -- YOU NEEDED

11  TO HAVE SOME DISCOVERY AND AN ALTERNATIVE WAY OF VALUING OR

12  OF MEASURING WHAT THE -- WHAT THE HARM WAS TO MS. BERRY.  I

13  UNDERSTAND THAT.

14          BUT THAT WAS A -- IT'S A PRETTY THIN THREAD BECAUSE

15  IT IS -- IT IS DIFFERENT.  YOU HAVE TO -- YOU HAVE TO MAKE A

16  BIG STEP FROM THIS SORT OF IMPLICIT SEMI-ENDORSEMENT PRODUCT

17  PLACEMENT -- YOU HAVE TO MAKE A BIG STEP FROM THERE TO THE,

18  YOU KNOW, PURE ADVERTISING USE THAT IS AT ISSUE IN THIS CASE.

19  BUT I WAS PREPARED TO GO THERE TO SOME DEGREE.

20          AND IT'S -- YOU KNOW, I'LL GRANT YOU.  YOU PROBABLY

21  ARE NOT IN THIS CASE GOING TO KNOW EVERYTHING THERE IS TO

22  KNOW ABOUT WHAT MS. BERRY MAY HAVE BEEN GIVEN ON A PARTICULAR

23  OCCASION AND WORN.  IT'S NOT GOING TO BE THE UNIVERSE OF

24  INFORMATION THAT COULD CONCEIVABLY BE AVAILABLE.

25          BUT I THINK IT'S A REASONABLE PARAMETER OF

1  DISCOVERY.  SO THAT IF WE'RE TALKING ABOUT DOCUMENTS THAT

2  EVIDENCE THOSE KINDS OF AGREEMENTS, AND WE -- AND THERE'S A

3  REASONABLE COLLECTIVE UNDERSTANDING I THINK ABOUT A DOCUMENT

4  THAT EVIDENCES AN AGREEMENT --

5            MR. MANDELL:  WELL, LET ME -- CAN I ASK FOR --

6            THE COURT:  -- FROM ONE THAT ARGUABLY REFERS TO IT.

7            MR. MANDELL:  SO, MAY I ASK FOR JUST A POINT OF

8  CLARIFICATION ON THAT.

9            THE COURT:  UH-HUM.

10            MR. MANDELL:  IF MS. BERRY WERE TO -- AS I BELIEVE

11  SOME OF THESE TEXT MESSAGES SAID -- IF SHE WERE TO SAY

12  SOMETHING ALONG THE LINES OF, YOU KNOW, I WAS AT MY RUN/WALK

13  EVENT.  AND I WAS PHOTOGRAPHED USING THE STUDDED IPHONE

14  HOLDER YOU GAVE ME AND THEN "YAY," SOMETHING ALONG THOSE

15  LINES, IN MY VIEW THAT -- THAT COULD EVIDENCE AN AGREEMENT

16  THAT SHE HAD ACCEPTED THAT PIECE -- THAT IPHONE HOLDER IN

17  EXCHANGE FOR WEARING IT AT THAT RUN/WALK EVENT AND BEING

18  PHOTOGRAPHED USING IT.

19            WOULD THAT BE SOMETHING THAT WOULD NEED TO BE

20  PRODUCED?

21            THE COURT:  THAT I -- I DON'T KNOW.

22            MR. MANDELL:  WELL, OKAY.

23            THE COURT:  IT'S TOO -- TOO IMPRECISE FOR ME.  I

24  MEAN, I DON'T KNOW.

25            MR. MIRELL:  MAY I JUST -- MAY I JUST ADDRESS THIS

1   FOR ONE MOMENT.

2              THE COURT:  YES.

3              MR. MIRELL:  IT SEEMS TO ME -- I THINK I UNDERSTAND

4   PRECISELY WHERE THE COURT IS GOING.

5              AND WHAT MR. MANDELL HAS REPRESENTED AND WHAT I

6   COULD ACKNOWLEDGE IS THAT IF THERE IS A COMMUNICATION FROM MY

7   CLIENT THAT SAYS TO SOMEBODY GO AHEAD AND PUT THIS UP ON YOUR

8   WEBSITE, GO AHEAD AND PUT THIS UP ON YOUR FACEBOOK PAGE, I

9   WOULD CONSIDER THAT A WRITTEN FORM OF SOME SORT OF

10  ENDORSEMENT.  IT DOESN'T NECESSARILY ABSOLVE TOYWATCH OF

11  ANYTHING IN TERMS OF WHAT THEY'VE DONE AND HOW THEY HAVE

12  CHOSEN TO MARKET HER IMAGE.

13             BUT IF THAT'S WHAT THE COURT IS SAYING TO US, THAT

14  IF THERE IS A WRITTEN ACKNOWLEDGMENT BY HER OF SOME, YOU

15  KNOW, ENDORSEMENT OF THAT CHARACTER, YOU KNOW, WE WILL

16  ENDEAVOR AGAIN TO GO BACK AND LOOK FOR DOCUMENTATION LIKE

17  THAT.

18             BUT LET ME JUST SAY THIS. THAT THIS REALLY IS

19  ENTIRELY TANGENTIAL TO THE SUBJECT MATTER OF THIS LITIGATION

20  BECAUSE MR. MANDELL HAS NOT REPRESENTED, HIS PARTNER HAS NOT

21  REPRESENTED, NO ONE ON THE DEFENDANTS' SIDE HAS EVER

22  REPRESENTED THAT THERE HAS BEEN ANY STATEMENT MADE BY

23  MS. BERRY WITH RESPECT TO THE USE OF HER NAME OR IMAGE IN

24  CONNECTION WITH THE PARTICULAR ADVERTISEMENT THAT'S AT ISSUE

25  IN THE LITIGATION.

1          AND TO THE EXTENT SHE HAS, YOU KNOW, SAID YES OR NO

2   WITH RESPECT TO OTHER OPPORTUNITIES IS HER CHOICE, BUT IT HAS

3   NO BEARING UPON WHETHER OR NOT THE ENDORSEMENT IMPLIED BY THE

4   DEFENDANTS' CONDUCT OR EXPRESSED IN THE WAY IN WHICH THEY

5   MADE THEIR -- PUBLICIZED THEIR CONNECTION TO HER, THERE'S NO

6   SUGGESTION WHATSOEVER THAT THERE HAS BEEN ANY ENDORSEMENT BY

7   HER, IMPLIED OR OTHERWISE, OF THEIR USAGE.

8          MR. MANDELL:  BUT IT'S RELEVANT --

9          MR. MIRELL:  AND IT'S ONLY THEIR USAGE, WHICH IS,

10  THE SUBJECT OF THIS LITIGATION.

11         MR. MANDELL:  BUT, MR. MIRELL, IT'S RELEVANT TO

12  DAMAGES --

13         THE COURT:  YES, THAT'S THE DISTINCTION.  AND -- I

14  MEAN, I -- IF I'M UNDERSTANDING CORRECTLY, YOU WERE SORT OF

15  ADVANCING AS WELL AN ARGUMENT THAT GOES MORE TO LIABILITY,

16  WHICH IS, THAT IF THIS IS A WIDESPREAD PRACTICE, I CAN ARGUE

17  THAT IT IMPLIES -- THAT THERE'S IMPLIED CONSENT.

18         MR. MANDELL:  AND THAT'S AT THE VERY LEAST, YOUR

19  HONOR.

20         I THINK IT'S VERY LIKELY THAT AMONG THESE TEXT

21  MESSAGES WE MAY FIND AN EXPRESS -- EXPRESS CONSENT.

22         THE COURT:  TO TOY- -- IN TOYWATCH?

23         MR. MANDELL:  I THINK IT'S VERY LIKELY WE MAY FIND

24  THAT.

25         THE COURT:  WELL, IF --

1           MR. MANDELL:  I THINK IT'S A POSSIBILITY.  WE DON'T

2    --

3           THE COURT:  HOLD ON.  I THINK THAT ANY

4    COMMUNICATION -- I DIDN'T THINK WE WERE EVER TALKING ABOUT

5    THIS -- ANY COMMUNICATION ABOUT TOYWATCH AND ABOUT THIS

6    PRODUCT, THAT WOULD BE SUBJECT TO DISCOVERY.

7           MR. MANDELL:  I MEAN, I DON'T KNOW --

8           YES.

9           THE COURT:  BUT YOU'RE -- BUT THAT'S -- THAT'S NOT

10   WHAT WE'VE BEEN TALKING ABOUT.  WE HAVE BEEN TALKING ABOUT A

11   SCOPE OF DISCOVERY FOR WHAT KINDS OF AGREEMENTS --

12          MR. MANDELL:  YES.  YES, YOUR HONOR.

13          THE COURT:  -- ENDORSEMENT AGREEMENTS THAT YOU

14   COULD USE TO COUNTER THE ARGUMENT THAT THIS IS WHAT MS.

15   BERRY'S ENDORSEMENT IS WORTH.  BECAUSE YOU'RE GOING TO BE

16   ABLE TO SAY, WELL, BUT WHEN IT'S NOT A NATIONWIDE WORLDWIDE

17   KIND OF A --

18          MS. CHRISTA:  CAMPAIGN.

19          THE COURT:  -- FORMAL AGREEMENT, CAMPAIGN, YOU KNOW,

20   SHE'S BEEN OPEN TO A DIFFERENT KIND OF, YOU KNOW, LOW-RENT

21   ENDORSEMENT.

22          MR. MANDELL:  CORRECT.

23          THE COURT:  OKAY.  THAT'S -- AND I HAVE VIEWED THAT

24   AS A LEGITIMATE THEORY OF DISCOVERY FOR DAMAGES.  SO, IF

25   THERE ARE SUCH AGREEMENTS, DOCUMENTS REFLECTING SUCH

1  AGREEMENTS, THOSE SHOULD BE PRODUCED.

2          BUT -- AND I UNDERSTAND THAT THEY MAY BE ORAL.  AND

3  I UNDERSTAND THAT'S WHY PART -- PART OF WHAT YOU'RE DOING

4  HERE IS CONDUCTING DEPOSITIONS OF PEOPLE WHO WOULD ARGUABLY

5  KNOW --

6          MR. MANDELL:  UH-HUM.

7          THE COURT:  -- ABOUT THOSE KINDS OF PRACTICES.

8          IN TERMS OF PUTTING THIS IN THE CONTEXT OF THE

9  DECISION ABOUT GOING FORWARD WITH MEDIATION, IT JUST SEEMS TO

10 ME LIKE YOU HAVE -- YOU HAVE INFORMATION TO MAKE THE

11 ARGUMENTS THAT YOU'RE GOING TO MAKE.  AND MAYBE IN THE COURSE

12 OF THE REST OF THE DISCOVERY YOU'LL GET MORE.  BUT I'M GOING

13 TO DRAW THOSE LINES.  AND THERE ARE A NUMBER OF OTHER PLACES

14 HERE WHERE YOU'VE TALKED ABOUT DRAWING SOME LINES.  AND I'M

15 GOING TO DRAW THEM AS WELL.  AND IT'S NOT GOING TO BE MUCH

16 MORE EXPANSIVE THAN WHAT I -- WHAT I'VE JUST SAID.

17         I CAN TELL YOU THAT REGARDING THE CHARITY

18 AGREEMENTS, I AGREE WITH THE PLAINTIFF.  IT DOESN'T LOOK LIKE

19 THERE'S A DISPUTE REMAINING THERE.  I WOULDN'T ORDER MORE

20 PRODUCTION.  I WOULD NOT TALK ABOUT A TRADE-OUT AGREEMENT AS

21 INCLUDING A POSSIBILITY OF USE.  IT HAS TO BE MORE OF AN

22 EXPRESS UNDERSTANDING THAN THAT, THAT SOMETHING IN VALUE HAS

23 BEEN GIVEN TO HER IN EXCHANGE FOR HER AGREEMENT TO WEAR IT OR

24 USE IT.

25         THE DISPUTE THAT YOU HAVE -- I GUESS THIS IS WHAT

1    WE HAD TALKED ABOUT BEFORE ABOUT WHETHER DOCUMENTS RELATING

2    TO CLOTHING AND ACCESSORIES WHICH SHE RECEIVED THAT SHE

3    DIDN'T PAY.  THAT'S WHAT I'M SAYING.  THAT'S BROAD.  THAT'S

4    WHERE I'M NOT GOING.  I AGREE WITH PLAINTIFF ON THAT.

5            REGARDING THE APPEARANCE AGREEMENTS, I AGREE WITH

6    PLAINTIFF ON THAT.

7            AND, NOW, NUMBER 6 ON PAGE 8, IF YOU GET THE

8    1099'S, I THINK THAT'S MORE THAN SUFFICIENT IN TERMS OF TAX

9    INFORMATION.

10           SO, I'M NOT TODAY EXPANDING IN ANY WAY THE

11   DOCUMENTS THAT I ORDERED TO BE PRODUCED --

12           MR. MANDELL:  YOUR HONOR --

13           THE COURT:  -- OTHER THAN -- OTHER THAN TO MAKE IT

14   CLEAR THAT IT SHOULD BE DOCUMENTS THAT EVIDENCE, CONSTITUTE,

15   OR REFLECT THE AGREEMENTS.

16           MR. MANDELL:  CAN I ADDRESS JUST TWO -- TWO POINTS

17   I JUST WANTED TO ADD INFORMATION THAT MAY NOT HAVE BEEN --

18           THE COURT:  SURE.

19           MR. MANDELL:  -- THE COURT MAY NOT HAVE BEEN PRIVY

20   TO.

21           THE COURT:  OH, DID -- BUT DID --

22           MS. CHRISTA IS THERE.  DID SHE --

23           MS. CHRISTA:  I JUST WANTED TO SAY, YOUR HONOR, YOU

24   KNOW, WE SOMETIMES REFER OUR ROLE IN THE CASE AS THE

25   HOUSEKEEPER OR SOME PEOPLE CALL US THE PLUMBER.  YOU KNOW,

1   THE TRIBOO ENTITIES ARE REALLY IN THE BUSINESS OF HELPING

2   COMPANIES LIKE TOYWATCH AND MASERATI AND --

3           THE COURT:  UH-HUM.

4           MS. CHRISTA:  -- TESTONI AND FERRARI MAKE SURE THAT

5   WHATEVER IT IS THEY WANT ON THEIR WEBSITE WORKS -- THE LINKS

6   WORK, THE FONTS WORK AND SO ON.  AND THAT'S OUR SPECIALITY.

7           AND AS YOU CAN IMAGINE, THIS IS SOMETHING THAT WE

8   REALLY WOULD LIKE TO SEE A MEDIATION HAPPEN SOONER RATHER

9   THAN LATER.

10          I THINK THERE IS AN UNDERSTANDING NOW SINCE WE'VE

11  COME INTO THE CASE, OUR FIRM, THAT WE HAVE A VERY LIMITED

12  ROLE.  SO, I'M GOING TO SUGGEST, PERHAPS, A COMPROMISE THAT

13  WOULD SATISFY I HOPE MR. MANDELL AND THE PLAINTIFF IN THIS

14  CASE.  AND THAT WOULD BE THAT IF MR. MANDELL IS NOW IN TOUCH

15  WITH AMY CARPENTER, WHO IS GIVING HIM THIS INFORMATION, I'M

16  NOT SURE WHY YESTERDAY WAS THE FIRST TIME.  BUT I KNOW THAT

17  SHE HAS THIS INFORMATION.

18          YOU SAID THAT SHE HAS TO PLUG IN AN IPHONE TO GET

19  THE REST OF IT.  IF WE CAN GET THAT INFORMATION -- AND THIS

20  TIME GET IT TO US RIGHT AWAY -- I THINK BEFORE A MEDIATION

21  NEXT WEEK WE HAVE A SENSE AS YOUR HONOR JUST RECENTLY PUT IT

22  OF -- OF LARGELY WHAT THE FACTS ARE THAT ARE GOING TO BE IN

23  PLAY, QUOTE, UNQUOTE, IN TRYING TO MAKE AN ARGUMENT BEFORE

24  THE MEDIATOR THAT THERE'S SOME KIND OF A PATTERN AND PRACTICE

25  OF IMPLIED CONSENT OR SOMETHING ALONG THOSE LINES.

1            AND I DON'T KNOW THAT FURTHER DEPOSITIONS, ET

2    CETERA, WILL REALLY INCREASE THE KNOWLEDGE IN THAT REGARD.

3    AND IF WE'RE WRONG, PERHAPS, JUDGE PINELLI CAN'T RESOLVE IT.

4    BUT IT SEEMS TO ME SELFISHLY -- BECAUSE WE'D LIKE TO GET OUT

5    OF THE CASE -- THAT IT'S A GOOD TIME FOR A MEDIATION.  AND

6    WE'RE SOLVING THE PROBLEM OF WHETHER OR NOT SUFFICIENT FACTS

7    REGARDING THESE OTHER ISSUES THAT MR. MIRELL CALLS TANGENTIAL

8    AND MR. MANDELL FEELS ARE CENTRAL COULD IN LARGE PART BE

9    PRODUCED AND PART OF THE MEDIATION.

10           THANK YOU.

11           THE COURT:  OKAY.

12           MR. MANDELL.

13           MR. MANDELL:  YES, YOUR HONOR.  JUST A COUPLE OF

14   THINGS.

15           FIRST, AS TO THE CHARITY AGREEMENTS --

16           THE COURT:  UH-HUM.

17           MR. MANDELL:  -- I'D ALSO ASK THAT THEY PRODUCE, YOU

18   KNOW, DOCUMENTS REGARDING SITUATIONS WHERE, YOU KNOW, PAYMENT

19   WAS MADE TO A CHARITY OF MS. BERRY'S CHOICE OR TO A CHARITY

20   WHERE MS. BERRY ALSO ENDORSES A CHARITY.

21           AND THE REASON I'M ASKING FOR THAT IS BECAUSE -- I

22   COULD BE WRONG, BUT I BELIEVE THAT MY UNDERSTANDING OF THE

23   MICHAEL KORS' CHARITY IS THAT BERRY ENTERED INTO AN AGREEMENT

24   WHERE SHE WAS NOT ENDORSING MICHAEL KORS.  BUT SHE WAS

25   ENDORSING A MICHAEL KORS' CHARITY.  AND IN EXCHANGE FOR THAT,

1  YOU KNOW, SHE RECEIVED -- I DON'T KNOW IF SHE RECEIVED

2  SOMETHING, BUT, YOU KNOW, A DONATION MAY HAVE BEEN MADE ON

3  HER BEHALF.

4           BUT -- SO, IT SEEMS LIKE THERE ARE SITUATIONS

5  WHERE, YOU KNOW, MS. BERRY IS NOT NECESSARILY ENDORSING A

6  PRODUCT OR A COMPANY BUT SHE'S ENDORSING A COMPANY'S CHARITY

7  IN RETURN FOR RECEIVING SOMETHING OR IN RETURN FOR A

8  CHARITABLE DONATION BEING MADE ON HER BEHALF.

9           THE COURT:  WELL, I UNDERSTAND THAT DOCUMENT WAS

10  PRODUCED, RIGHT? --

11           MR. MIRELL:  CORRECT.

12           MR. MANDELL:  IT WAS.

13           THE COURT:  -- THE MICHAEL KORS.

14           MR. MANDELL:  JUST -- I'M JUST WONDERING --

15           THE COURT:  YES.

16           MR. MANDELL:  -- IF OTHER SIMILAR -- ANY OTHER

17  DOCUMENTS LIKE THAT, YOU KNOW, WE WOULD ASK THAT THOSE --

18  THOSE SHOULD BE PRODUCED TO THE EXTENT THERE ARE ANY.  I JUST

19  -- I DIDN'T WANT THE DEFINITION OF WHAT NEEDS TO BE PRODUCED

20  TO BE, YOU KNOW, LIMITED TO ONLY WHERE SHE'S ENDORSING A

21  PRODUCT OR A COMPANY OR SOMETHING LIKE THAT AND NOT

22  SITUATIONS WHERE SHE'S ALSO ENDORSING A CHARITY.

23           THE COURT:  WELL, IT SOUNDS LIKE IT WAS -- IT WAS

24  NOT UNDERSTOOD TO EXCLUDE THAT BECAUSE THAT'S WHY YOU GOT

25  THAT DOCUMENT.

1          MR. MIRELL:  CORRECT.

2          THE COURT:  OKAY.

3          MR. MANDELL:  AND --

4          THE COURT:  BUT IT ALSO SOUNDED TO ME LIKE YOU WERE

5    ASKING FOR SOMETHING -- WELL, TO THE EXTENT THAT YOU WERE

6    ASKING FOR SOMETHING BROADER THAN AN ENDORSEMENT BY HER IN

7    EXCHANGE FOR SOMETHING OF VALUE, THEN, I'M NOT --

8          MR. MANDELL:  NO, I WAS NOT, YOUR HONOR.

9          THE COURT: -- EXPANDING THAT.

10          MR. MANDELL:  AND THEN THE OTHER QUESTION AS FAR AS

11   YOU ORDERED THAT THEY WOULD -- HAD TO PRODUCE TAX DOCUMENTS

12   THAT REFLECT GIFTS THAT MS. BERRY RECEIVED -- NOT GIFTS BUT

13   ITEMS OR SOMETHING OF VALUE THAT MS. BERRY RECEIVED IN

14   EXCHANGE FOR PERHAPS AN APPEARANCE AT AN EVENT.  I WOULD ASK

15   THE COURT TO ALSO ORDER THAT OTHER DOCUMENTS ALSO BE

16   PRODUCED.

17          I DON'T THINK THAT BASED ON THE DEPOSITION OF THE

18   PLAINTIFF'S MANAGER, MR. WOLMAN, WHO HANDLES HER TAXES, DUE

19   TO A CHANGE IN THE TAX LAW, WHICH I THINK PROBABLY HAPPENED

20   FAIRLY RECENTLY, THAT ALL OF THE ITEMS THAT SHE WOULD HAVE

21   RECEIVED IN EXCHANGE FOR APPEARING AT AN EVENT IN A

22   PROMOTIONAL CAPACITY, THAT THOSE GIFTS WOULD BE REFLECTED IN

23   TAX DOCUMENTS.

24          SO, I'M WONDERING IF YOUR HONOR WOULD BROADEN THE

25   SCOPE OF THE DOCUMENTS THAT WOULD HAVE TO BE PRODUCED AT --

1          THE COURT:  YOU'RE SAYING THAT THEY WOULD BE

2     REFLECTED IN TAX DOCUMENTS?

3          MR. MANDELL:  I'M SAYING THAT THEY WOULD NOT

4     NECESSARILY BE REFLECTED IN TAX DOCUMENTS --

5          THE COURT:  OKAY.

6          MR. MANDELL:  -- BECAUSE THEY WEREN'T --

7          THE COURT:  OH, OKAY.  I MEAN, HERE -- MY VIEW IS I

8     GENERALLY -- IT IS A RARE DAY WHEN I ORDER PRODUCTION OF A

9     TAX DOCUMENT IN DISCOVERY.  IF BY AGREEMENT, AS I HAD

10    UNDERSTOOD HERE, IT'S KIND OF A SHORT AND EASY WAY TO PRODUCE

11    CERTAIN INFORMATION IN THE FORM OF A 1099, THAT'S FINE BY ME.

12         MR. MANDELL:  OKAY.

13         THE COURT:  BUT, OTHERWISE, I'M NOT GOING TO ORDER

14    TAX -- TAX INFORMATION.

15         MR. MANDELL:  OKAY.  ALL RIGHT.

16         THE COURT:  YES.

17         MR. MANDELL:  THEN WE'LL STICK WITH THE 1099'S,

18    YOUR HONOR.

19         THE COURT:  OKAY.

20         MR. MANDELL:  THANK YOU.

21         THE COURT:  YES.

22         OKAY.  LET'S GO BACK TO THE MEDIATION BECAUSE I

23    GUESS TO SOME DEGREE THAT THAT THAT MAY AFFECT THE DEPOSITION

24    SCHEDULING.

25         ACTUALLY, LET'S DO THIS.  LET'S SKIP AND TALK ABOUT

1    BOTH SIDES' DEPOSITIONS.  I WANT TO JUST BRIEFLY ADDRESS THE

2    PRIVILEGED COMMUNICATIONS.

3                AND IS THAT -- IS THAT SOMETHING, THE PRIVILEGE

4    DOCUMENTS THAT HAVE BEEN LOGGED -- I'M NOW ON PAGE 9 OF YOUR

5    JOINT STATEMENTS -- THE DOCUMENTS THAT HAVE BEEN LOGGED ON

6    THE PRIVILEGE LOG, IS THAT SOMETHING WHERE IT'S JUST GOING TO

7    MAKE SENSE FOR ME TO LOOK AT THEM IN CAMERA?

8                MR. MANDELL:  I THINK SO, YOUR HONOR.

9                THE COURT:  OKAY.

10                MR. MANDELL:  IN FACT, WE'VE BROUGHT THEM WITH US.

11   WE'VE PREPARED A BRIEF FOR YOUR HONOR'S CONSIDERATION.  WE'VE

12   ALSO -- THAT'S A CONFIDENTIAL BRIEF, BUT WE'VE ALSO PREPARED

13   A REDACTED BRIEF FOR COUNSEL.

14                THE COURT:  OKAY.

15                MR. MANDELL:  SO --

16                THE COURT:  ALL RIGHT.  THAT SOUNDS FINE TO ME.

17                MR. MANDELL:  OKAY.

18                THANK YOU, YOUR HONOR.

19                THE COURT:  JUST HOW -- I'M ASSUMING WE'RE TALKING

20   ABOUT THREE PAGES, 416 TO 419?

21                MR. MANDELL:  NO --

22                MS. CHRISTA:  NOT WITH CHAD, YOUR HONOR.

23                MR. MIRELL:  WELL, WE GOT MORE -- WE'VE GOT AN

24   AUGMENTED PRIVILEGE LOG YESTERDAY WITH ADDITIONAL DATES AND

25   DOCUMENTS.  SO, I THINK WE'RE PROBABLY TALKING NOW -- NOT A

1    TERRIBLY BURDENSOME TASK, BUT WE'RE NOW TALKING ABOUT A TOTAL

2    OF ELEVEN PAGES, I THINK, OF DOCUMENTS.

3           THE COURT:  OKAY.  ALL RIGHT.  THAT I CAN HANDLE.

4    I CAN'T PROMISE HOW FAST I CAN HANDLE IT, BUT THAT CAN BE

5    HANDLED BY AN IN-CAMERA REVIEW.

6           MR. MIRELL:  SURE.

7           AND, YOUR HONOR, I'M NOT SURE TO WHAT EXTENT IT IS

8    EITHER NECESSARY OR -- I'M NOT SURE TO WHAT EXTENT IT'S

9    EITHER NECESSARY OR POSSIBLE FOR US TO RESPOND TO WHATEVER

10   BRIEFING MS. -- MR. MANDELL MAY BE SUBMITTING BECAUSE WE

11   DON'T KNOW WHAT THE DOCUMENTS CONTAIN.  AND WE'RE SORT OF --

12          THE COURT:  THAT'S ALWAYS A PROBLEM.

13          MR. MIRELL:  WE'RE SORT OF FLYING -- WE'RE FLYING

14   BLIND ON THAT.

15          THE COURT:  RIGHT.  RIGHT.

16          MR. MIRELL:  BUT WHAT I DO WANT THE COURT TO KNOW

17   AND APPRECIATE -- AND I THINK PROBABLY THE COURT ALREADY DOES

18   -- IS THAT THE FIRST GROUP OF DOCUMENTS THAT WERE IDENTIFIED

19   AS PRIVILEGED AFTER A YEAR OF DISCOVERY FINALLY IS DOCUMENTS

20   THAT PREDATE BY SOME SIX MONTHS --

21          THE COURT:  UH-HUM.

22          MR. MIRELL:  -- THE FILING OF THIS LITIGATION.

23          AND IN TERMS OF -- I APPRECIATE THE FACT THAT A

24   DIFFERENT CLIENT OF OUR FIRM AND TOYWATCH WERE ENGAGED AT

25   THAT TIME IN LITIGATION OVER A SIMILAR EX-APPROPRIATION OF

1    THAT CLIENT'S IMAGE, BUT IT SEEMS TO ME THAT THERE IS A --

2    THERE IS, AND OUGHT TO BE, A CLEAR DISTINCTION OR AN ABILITY

3    TO REDACT INFORMATION THAT RELATES TO THIS USAGE FROM THAT.

4                AND I THINK TO THE EXTENT THAT WHAT WE'RE TALKING

5    ABOUT ARE, INDEED, AS I'VE SUGGESTED IN OUR PAPERS OPERATIVE

6    FACTS THAT DON'T TIE TO ATTORNEYS' IMPRESSIONS OR MENTAL

7    THEORIES OR THE TRADITIONAL SORT OF WORK PRODUCT THAT I

8    UNDERSTAND THIS CLAIM OF PRIVILEGE RELATES TO -- BECAUSE IT

9    DOESN'T RELATE TO ATTORNEY/CLIENT COMMUNICATIONS -- THEN, I

10   THINK, YOU KNOW, HOPEFULLY, THE COURT WILL BE ABLE TO WORK

11   ITS WAY THROUGH AND DETERMINE WHAT'S APPROPRIATE.

12                THE COURT:  OKAY.  AND I'D CERTAINLY WELCOME A --

13   -- MY UNDERSTANDING IS YOU'RE GOING TO GET A REDACTED BRIEF.

14   AND, SO, THAT CAN WORK WELL IF ESSENTIALLY THE LEGAL

15   ARGUMENTS ARE IN THERE.  AND YOU'RE GOING TO BE AT THE

16   DISADVANTAGE OF THEM NOT REFERRING TO THE SPECIFIC CONTENT.

17                BUT IF YOU WOULD LIKE TO FILE A RESPONSE TO THAT,

18   I'D BE GRATEFUL.  THAT WOULD BE FINE.

19                MR. MIRELL:  WE WILL ENDEAVOR TO GET THAT ON FILE

20   JUST AS SOON AS POSSIBLE.  AND IF THERE IS ANY SIGNIFICANT

21   DELAY OF ANY KIND, WE'LL ALERT THE COURT --

22                THE COURT:  OKAY.

23                MR. MIRELL:  -- AND INDICATE WHEN --

24                THE COURT:  THAT'S FINE.

25                MR. MIRELL:  -- WE EXPECT TO BE ABLE TO HAVE IT.

1              MR. MANDELL:  YES, YOUR HONOR.

2              THE COURT:  THANK YOU.

3              AND, AGAIN, IN TERMS OF THE DEFENDANTS' PRODUCTION

4     OF DOCUMENTS, I READ THIS TO REPRESENT ONCE AGAIN THAT

5     DEFENDANTS WILL DO ANOTHER REVIEW AND MAKE SURE THAT ALL

6     NON-PRIVILEGED COMMUNICATIONS HAVE BEEN PRODUCED.

7              MR. MANDELL:  WE WILL, YOUR HONOR.

8              THE COURT:  YES.  OKAY.

9              ALL RIGHT.  THEN, THERE ARE THE ISSUES ABOUT THE

10    DEPOSITIONS.

11             I DID NOT INTEND BY SETTING THE -- OR ASKING YOU

12    ALL TO AGREE TO THE SCHEDULING OF THE FIVE PLAINTIFFS'

13    DEPOSITIONS OR DEPOSITIONS OF PLAINTIFFS THAT THERE WAS NO

14    POSSIBILITY OF ADDITIONAL DEPOSITIONS FOR THE DEFENDANTS THAT

15    -- I'M NOT PRECLUDING THAT, BUT IT DOESN'T -- IT DOESN'T

16    SOUND LIKE THERE'S ANY --

17             MS. CHRISTA:  CURRENT ISSUE.

18             THE COURT:  -- IMMEDIATE CURRENT IDENTIFICATION OF

19    PEOPLE WHO WOULD WANT TO BE DEPOSED -- WHO YOU WANT TO

20    DEPOSE.  AND IF THERE IS, THAT'S SOMETHING YOU OUGHT TO BE

21    ABLE TO WORK OUT.  I DID NOT INTEND TO PRECLUDE THAT.

22             AND I'M NOT GOING TO REVISIT THE TIMING OF MS.

23    BERRY'S DEPOSITION.  AND I DON'T THINK THAT IT'S NECESSARY OR

24    APPROPRIATE TO GET SOME AGREEMENT AT THIS POINT THAT THE

25    DEPOSITION -- THAT DISCOVERY COULD CONTINUE PAST THE CUTOFF.

1          I DON'T THINK THAT JUDGE KRONSTADT -- I THINK HE

2     CLEARLY WANTS TO KEEP TO HIS SCHEDULE, BUT I DON'T THINK HE'S

3     UNREASONABLE IN TERMS OF ACCOMMODATING THE LEGITIMATE NEEDS

4     FOR DISCOVERY.  I NEVER FOUND HIM TO BE ANYTHING OTHER THAN

5     EMINENTLY REASONABLE.  AND, SO, I'M NOT TOO WORRIED ABOUT

6     THAT PROBLEM, IF THERE IS A LEGITIMATE NEED FOR ADDITIONAL

7     DISCOVERY PAST CUTOFF.

8          BUT ALL OF THIS STILL LEADS ME TO COME BACK AND

9     URGE -- YOU KNOW, ESPECIALLY WHEN YOU'RE TALKING ABOUT THE

10    DIFFICULTIES OF SCHEDULING TRIPS FOR DEFENDANTS HERE TO BE

11    DEPOSED, THAT THERE REALLY BE AN EFFORT -- AND I CAN ASSURE

12    YOU I WILL BE SPEAKING FOR JUDGE KRONSTADT AS I SAY THESE

13    WORDS -- TO TRULY EXHAUST EVERY REASONABLE EFFORT TO RESOLVE

14    THIS CASE.  AND THAT WITH JUSTICE PINELLI'S AVAILABILITY --

15    AND IT DOES SEEM PARTICULARLY WELL-SUITED TO MAKING THE BEST

16    POSSIBLE EFFORT TO RESOLVE IT -- THAT NOW WOULD BE THE TIME

17    TO DO THAT.

18         SO, YOU KNOW, MEDIATION DOES REQUIRE THAT EVERYBODY

19    BUY INTO THE PROCESS.  IT'S NEVER SEEMED TO ME TO BE

20    PARTICULARLY HELPFUL TO ORDER PEOPLE TO MEDIATION.  BUT IF I

21    COULD STRONGLY URGE AND SUGGEST THAT NOW IS REALLY A GOOD

22    TIME TO DO IT, THAT IS WHAT I WOULD LIKE TO DO.

23         MS. CHRISTA:  YOUR HONOR, IN TAKING THE TEMPERATURE

24    AND TRYING TO PUSH MEDIATION AMONG THE PARTIES FOLLOWING

25    DEPOSITIONS AND IN EMAILS AND SO ON, I AM RELATIVELY CERTAIN

44

1    THAT THERE WILL NOT BE A MEDIATION WITHOUT MORE PRESSURE FROM

2    THE COURT CERTAINLY UNTIL HALLE BERRY'S DEPOSITION IS TAKEN.

3    AND I THINK THAT'S A SHAME.

4            THE COURT:  OKAY.

5            MR. MIRELL:  I HOPE THAT MS. LAURA'S -- MS.

6    CHRISTA'S PESSIMISM IS UNWARRANTED, BUT IF -- IF THAT'S THE

7    TEMPERATURE THAT SHE IS ASCERTAINING FROM HER SIDE OF THE

8    TABLE, YOU KNOW, THAT WOULD BE A CONCERN OF OURS AS WELL,

9    OBVIOUSLY, BECAUSE SHE -- MS. BERRY IS NOT SCHEDULED TO BE

10   DEPOSED UNTIL I BELIEVE THE LAST WEEK IN JULY.  AND WE DO

11   HAVE A DISCOVERY CUTOFF.  AND WE HAVE, YOU KNOW, A MEDIATOR

12   WHO IS ACCEPTABLE TO ALL SIDES AND IS AVAILABLE.

13           MR. MANDELL:  YOUR HONOR, WITH ALL DUE RESPECT TO

14   MS. CHRISTA WHO --

15           MS. CHRISTA:  DESERVES RESPECT.

16           MR. MANDELL:  -- WHO I LIKE AND HAVE COME TO

17   RESPECT IN THE SHORT TIME THAT I'VE KNOWN HER -- THAT HASN'T

18   BEEN OUR POSITION THAT WE ARE WAITING FOR MS. BERRY'S

19   DEPOSITION UNTIL WE ARE READY TO SCHEDULE A MEDIATION.

20           OUR CONCERN IS, AS I SAID IN THE VERY BEGINNING,

21   HAS TO DO WITH THESE DOCUMENTS THAT, YOU KNOW, IF THEY'RE OUT

22   THERE, WE WOULD LIKE TO HAVE THEM.  WE WOULD LIKE A SEARCH TO

23   BE CONDUCTED AT LEAST SO THAT WE HAVE EXAMPLES OF THE KIND OF

24   ENDORSEMENT AGREEMENTS THAT WE BELIEVE ARE OUT THERE.  THAT'S

25   REALLY WHAT WE HAVE BEEN WAITING FOR.

1          AND, YOU KNOW, WE'RE NOT SAYING THAT WE ABSOLUTELY

2     NEED MS. BERRY'S DEPOSITION BEFORE A MEDIATION.  THAT'S --

3          THE COURT:  WELL, WHAT I WOULD HOPE WE'VE

4     ACCOMPLISHED TODAY IS A FAIRLY CLEAR DELINEATION OF WHAT YOU

5     CAN EXPECT THE COURT -- WELL, A FAIRLY DELINEATED -- A FAIRLY

6     CLEAR DELINEATION OF WHAT THE SCOPE OF DISCOVERY -- OF

7     PERMISSIBLE DISCOVERY IS.

8          AND I UNDERSTAND THAT YOU MIGHT HAVE A BROADER VIEW

9     OF THAT JUST AS PLAINTIFF CAME IN LAST TIME WE WERE HERE

10    WITH, YOU KNOW, A MUCH NARROWER VIEW.

11         MAYBE TO SOME DEGREE WE'VE CLARIFIED YOUR

12    PRODUCTION OF AND DELIVERY TO COUNSEL OF THE RECORDS THAT

13    YOU'RE TALKING ABOUT, THE TEXT MESSAGES.  MAYBE WE'VE

14    SOMEWHAT CLARIFIED ONE PARTICULAR AREA OF THAT DISCOVERY.

15         BUT IF WE NOW KNOW THAT THIS IS WHAT'S GOING TO BE

16    DISCOVERABLE -- AND I THINK IF PLAINTIFFS CAN REPRESENT THAT

17    THEY WILL CONDUCT AN ADDITIONAL SEARCH AND PRODUCE DOCUMENTS

18    BY NEXT WEEK, YOU KNOW, IF THERE ARE RESPONSIVE DOCUMENTS

19    WITHIN THE SCOPE OF MY ORDER, THAT THAT'S PRETTY MUCH WHERE

20    THINGS ARE GOING TO STAND.  IT'S NOT GOING TO GET BETTER

21    DISCOVERYWISE.

22         MR. MANDELL:  YOUR HONOR, AND TRUST ME, MY CLIENTS

23    WANT TO MEDIATE.  THEY WANT TO SETTLE THIS CASE.  AND, AGAIN,

24    THAT'S WHY WE SINCERELY APPRECIATE THE COURT'S ASSISTANCE AND

25    HELPING US WITH THESE DISCOVERY ISSUES.

1           THE COURT:  OKAY.

2           MR. MANDELL:  BECAUSE I THINK IT WILL --

3           THE COURT:  WELL -- WELL, THIS --

4           MR. MANDELL: -- IT WILL HELP US -- HELP FACILITATE

5     THE SCHEDULING OF THE MEDIATION.

6           THE COURT:  OKAY.  SO THAT YOUR CLIENTS UNDERSTAND

7     THAT, YES, I'VE ORDERED THERE TO BE AN ADDITIONAL SEARCH,

8     JUST AS I'VE ORDERED THAT YOU CONDUCT ONE MORE SEARCH.

9     THEY'RE SCEPTICAL, BUT --

10          MR. MANDELL:  YES.

11          THE COURT:  AND EVERYBODY SHOULD DO THAT AND BE

12    PREPARED TO GO INTO THE MEDIATION REPRESENTING THAT WHAT I

13    HAVE ORDERED TO BE PRODUCED HAS BEEN PRODUCED.  AGAIN, IT

14    DOES NOT ENCOMPASS THE UNIVERSE OF POSSIBLE INFORMATION.

15    BUT IT DOES ENCOMPASS WHAT'S GOING TO BE DISCOVERABLE, AT

16    LEAST FOR THIS FORESEEABLE FUTURE IN THIS CASE.

17          AND, THEN, THERE'S REALLY NO NEED TO HOLD OFF.  IF

18    THE MEDIATION IS UNSUCCESSFUL, IT'S UNSUCCESSFUL.  BUT NO ONE

19    WILL EVER KNOW THAT UNLESS THE -- UNLESS YOU TRY.

20          AND I REALLY DO THINK THAT YOU ALL HAVE ENOUGH

21    INFORMATION TO KNOW WHAT THE ISSUES ARE HERE.  AND YOU MAY

22    END UP WITH VERY DIFFERENT VIEWS ABOUT THE VALUE OF THE CASE,

23    BUT THAT'S -- THAT'S WHAT THE MEDIATION PROCESS IS IS TO SEE

24    WHETHER IT'S POSSIBLE THAT THERE'S A MEETING GROUND FOR IT

25    WITH EVERYBODY'S UNDERSTANDING THAT THERE ARE GOING TO BE

1  ARGUMENTS MADE -- YOU KNOW, FOR EVERY ARGUMENT YOU MAKE, MR.

2  MIRELL IS GOING TO MAKE AN ARGUMENT AND VICE-VERSA.  SO,

3  THAT'S WHAT YOU GO INTO TO HASH OUT AND HAVE JUSTICE

4  PINELLI'S ASSISTANCE ON.

5         MS. CHRISTA:  YOUR HONOR, JUST AS A PRACTICAL

6  MATTER, IT SOUNDS LIKE THERE'S GOING TO BE ANOTHER WEEK

7  NECESSARY FOR EVERYBODY TO MAKE SURE THAT ALL THE RELEVANT

8  DOCUMENTS HAVE BEEN PRODUCED PURSUANT TO THE --

9         THE COURT:  UH-HUM.

10         MS. CHRISTA:  -- LINES YOU'VE DRAWN.  I KNOW MR.

11  MANDELL I THINK WOULD LIKE TO DO SOME INFORMAL DISCOVERY.

12  AND HE'S WELL ON THE WAY TO THAT, IT SOUNDS LIKE.

13         I THINK THE ISSUE IS GOING TO BE THAT I JUST LOOKED

14  AT THE DATES THAT COUNSEL HAVE PROVIDED FOR WHEN MR. PINELLI

15  -- JUDGE PINELLI IS AVAILABLE.  AND WHILE HE'S AVAILABLE

16  NEXT WEEK, NEXT WEEK DOESN'T LOOK LIKE WE'RE GOING TO HAVE

17  EVERYTHING READY AND DONE FOR.  AND THEN HE'S NOT AVAILABLE

18  UNTIL THE 14TH.  SO, WE'VE GOT THIS WEEK OF DEPOSITIONS, JULY

19  7TH, WHERE I SEE CAPOBIANCO, TOYWATCH, AND THE OTHER MANAGER.

20         I AM GOING TO MAKE A REACH OUT HERE.  AND I HAVEN'T

21  DISCUSSED THIS WITH COUNSEL, ALTHOUGH I DON'T THINK THEY'LL

22  OBJECT.  CAN WE MOVE DISCOVERY A COUPLE OF WEEKS SO THAT WE

23  CAN DO THOSE DEPOSITIONS AFTER THAT MEDIATION.

24         MR. MIRELL:  I WAS ABOUT TO SUGGEST THE SAME THING.

25         OUR UNDERSTANDING OF JUSTICE PINELLI'S AVAILABILITY

1    INITIALLY ACCORDS WITH WHAT MS. CHRISTA JUST INDICATED, THAT

2    HIS NEXT AVAILABLE DATE IS THE 14TH.

3         BUT I THINK IT -- YOU KNOW, GIVEN WHAT THE COURT

4    HAS SAID AND GIVEN OUR VIEWS AS WELL, WE THINK THAT THE NEXT

5    TIME WE MEET AS A GROUP OUGHT TO BE IN A MEDIATION RATHER

6    THAN IN A DEPOSITION.

7         THE COURT:  SO, YOU'RE TALKING ABOUT EXTENDING YOUR

8    DISCOVERY CUTOFF BY --

9         MR. MIRELL:  I'M NOT SUGGESTING THAT, BUT --

10   BECAUSE THE DISCOVERY CUTOFF DOESN'T END UNTIL THE END OF --

11   UNTIL AUGUST THE 1ST, BUT I THINK IF WE CAN POSTPONE THE

12   DEPOSITIONS THAT WERE SCHEDULED FOR THE WEEK OF JULY 7TH --

13   BECAUSE WE DON'T HAVE ANY DEPOSITIONS SCHEDULED FOR NEXT

14   WEEK, THEN, WE CAN, YOU KNOW, RESCHEDULE THOSE IMMEDIATELY

15   AFTER A MEDIATION SHOULD THAT MEDIATION PROVE INEFFECTUAL.

16        THE COURT:  YES.  I WOULD ENCOURAGE THAT.

17        DOES THAT WORK FOR YOU, MR. MANDELL?

18        MR. MANDELL:  YOU DON'T WANT TO SAY WE CAN HAVE

19   SEVEN DAYS OR SOMETHING?

20        MR. MIRELL:  WELL, I THINK IF -- I THINK IF WE NEED

21   TO EXTEND THE DISCOVERY --

22        IS THAT WHAT YOU'RE SUGGESTING? -- IF WE NEED --

23        MR. MANDELL:  WELL, YEAH, BECAUSE IT'S --

24        MR. MIRELL:  -- TO EXTEND THE DISCOVERY CUTOFF, I

25   THINK THAT'S A MATTER WE NEED TO TAKE UP WITH JUDGE KRONSTADT

1   --

2              THE COURT:  IT IS.  BUT I WOULD --

3              MS. CHRISTA:  THE DATES ARE TOUGH FOR SOME OF THE

4    WITNESSES.

5              THE COURT: -- I WOULD -- I WOULD MAKE A CALL TO

6    FACILITATE THAT, BUT I THINK IT'S PROBABLY PREMATURE.

7              MS. CHRISTA:  OKAY.

8              THE COURT:  BUT --

9              MS. CHRISTA:  I JUST WANTED TO TEE THAT UP BECAUSE

10   --

11             THE COURT:  TEE THAT -- YES.

12             MS. CHRISTA:  -- PEOPLE HAVE BEEN AVAILABLE ONE DAY

13   AND MAYBE TEN DAYS LATER.  AND IT'S NOT GOING TO BE PERFECT

14   IN TERMS OF SCHEDULING.

15             THE COURT:  YEAH, YEAH.  AND AS I SAID, I'M NOT TOO

16   WORRIED ABOUT THAT IF IT'S --

17             MS. CHRISTA:  OKAY.

18             THE COURT:  -- IN THE CONTEXT -- PARTICULARLY IF

19   IT'S IN THE CONTEXT OF FACILITATING THE MEDIATION.

20             MS. CHRISTA:  ARE YOU GOING TO BE AVAILABLE ON THE

21   14TH THEN?

22             MR. MANDELL:  YOU KNOW WHAT, I CANNOT COMMIT TO A

23   DATE BECAUSE MY COLLEAGUE IS THE ONE WHO'S GOING TO BE

24   PRESENT.

25             THE COURT:  UH-HUM.

1          MR. MANDELL:  I ALSO HAVE TO SPEAK WITH MY CLIENTS

2     IN ITALY.  BUT I WILL -- YOU KNOW, AS SOON AS I GET BACK TO

3     MY OFFICE, I'LL MAKE THE NECESSARY COMMUNICATIONS TO

4     ASCERTAIN THE AVAILABILITY FOR THE 14TH OR THAT WEEK.

5          THE COURT:  OKAY.  AND --

6          MS. CHRISTA:  WELL, IT'S THE 14TH OR THE 15TH.

7          MR. MIRELL:  YES.

8          THE COURT:  THE 14TH OR THE 15TH --

9          MR. MANDELL:  FOR THE 14TH OR THE 15TH.

10         THE COURT: -- IS WHEN JUDGE PINELLI IS AVAILABLE.

11         MR. MIRELL:  AND WHILE MR. MANDELL CHECKS WITH HIS

12    CLIENTS, AND WHILE I CHECK WITH OURS, WE WILL REACH OUT TO

13    JUSTICE PINELLI AND CONFIRM HIS AVAILABILITY ON THOSE DATES

14    ON AN ONGOING BASIS.  SO --

15         THE COURT:  OKAY. ALL RIGHT.  THAT'S GOOD.

16         AND, THEN, BY AGREEMENT YOU'LL CONTINUE THE

17    DEPOSITIONS THAT ARE SET BETWEEN NOW AND THE MEDIATION DATE?

18         RIGHT?

19         MR. MANDELL:  WE HAVE NO OBJECTION TO THAT.

20         THE COURT:  YES.

21         MR. MANDELL:  WE WOULD AGREE TO IT, YOUR HONOR.

22         THE COURT:  OKAY.  ALL RIGHT.

23         OKAY.

24         MR. MANDELL:  WITH THE CAVEAT THAT IF ALL PARTIES

25    AGREE THAT MS. CARPENTER'S DEPOSITION SHOULD BE TAKEN PRIOR

1    TO A MEDIATION, THAT WE COULD WORK THAT OUT?

2              THE COURT:  YOU NEED HER DEPOSITION AS OPPOSED TO

3    JUST HER DOCUMENTS?

4              MR. MANDELL:  I MEAN, MY CONCERN IS THAT IF MOST OF

5    HER DOCUMENTS ARE TEXT MESSAGES STORED ON AN OLD IPHONE WITH

6    A CRACK ON THE SCREEN, HER DEPOSITION MAY BE NECESSARY.

7              MS. CHRISTA:  I DON'T HAVE A PROBLEM WITH THAT,

8    YOUR HONOR, AS LONG AS, AND ONLY IF, SHE'LL MAKE HERSELF

9    AVAILABLE FOR A HALF DAY WITHIN THE NEXT WEEK OR SO.  I DON'T

10   WANT THE INABILITY TO DEPOSE HER TO DELAY THE MEDIATION.

11             MR. MANDELL:  SHE WILL -- SHE'LL EVEN GO TO YOUR

12   OFFICE, OR WE COULD GO TO HER -- HER HOUSE.

13             MS. CHRISTA:  THAT'S FINE.  I MEAN, BUT THAT'S --

14   WE MAY NOT BE ABLE TO GET HER.

15             MR. MANDELL:  SHE WILL.  SHE WILL.

16             THE COURT:  OKAY.  SO, THE ONLY DEPOSITION WE'RE

17   TALKING ABOUT DOING POSSIBLY BETWEEN NOW AND THE MEDIATION IS

18   MS. CARPENTER'S, RIGHT?

19             MR. MANDELL:  YES.  CORRECT.

20             THE COURT:  OKAY.

21             MR. MANDELL:  CORRECT, YOUR HONOR.

22             MR. MIRELL:  WELL, I'M NOT OKAY WITH IT IF IT'S

23   HAPPENING NEXT WEEK --

24             MR. MANDELL:  RIGHT.

25             MR. MIRELL:  BECAUSE I'M ON VACATION NEXT WEEK.

1           MR. MANDELL:  FAIR ENOUGH.

2           I'VE ALREADY SPOKEN WITH MS. CARPENTER AND SHE IS

3    AVAILABLE THE SUBSEQUENT WEEK.  SHE'S PRETTY OPEN.  I THINK

4    SHE PROBABLY SHARES THE SENTIMENTS OF MANY IN THIS ROOM WHO

5    WOULD JUST LIKE TO SEE THIS COME TO A RESOLUTION.

6           THE COURT:  OKAY.  WELL --

7           MR. MIRELL:  SO LONG AS SHE CONTRIBUTES MONEY, WE

8    HAVE NO PROBLEM --

9           (LAUGHTER.)

10          MS. CHRISTA:  OR MAYBE SHE HAS INSURANCE.

11          MR. MIRELL:  THERE YOU GO.

12          THE COURT:  OKAY.  SO, THE ONLY DEPOSITION IS GOING

13   TO BE MS. CARPENTER'S IF NECESSARY.  THAT'S GOING TO PRECEDE

14   THE MEDIATION.  WE'RE LOOKING AT THE MEDIATION HOPEFULLY

15   BEING SCHEDULED THE 14TH OR THE 15TH.

16          IN THE MEANTIME THE DOCUMENTS WE'VE TALKED ABOUT

17   TODAY THERE'S GOING TO BE ANOTHER SEARCH SO THAT IF THERE'S

18   ANYTHING RESPONSIVE TO THAT REFINED DISCUSSION THAT WE'VE HAD

19   TODAY WILL BE PRODUCED.

20          AND, THEN, IF YOU CAN -- IF YOU CAN JUST -- YOU

21   KNOW, YOU CAN JUST SEND MS. ROBERSON AN EMAIL AND LET HER

22   KNOW WHAT'S HAPPENED WITH THE MEDIATION SCHEDULE.  OKAY?

23   JUST SO I KNOW.  OR TO ME.  JUST SOMEHOW --

24          MR. MANDELL:  WE WOULD BE HAPPY TO DO THAT, YOUR

25   HONOR.

 1              THE COURT:  OKAY.

 2              MS. CHRISTA:  WHERE IS THE BEST WAY TO CALL YOUR

 3      DEPUTY?

 4              THE COURT:  YES, FOR THE CHAMBERS -- WITH THE

 5      CHAMBER'S EMAIL.

 6              MS. CHRISTA:  OKAY.

 7              THE COURT:  YES, THERE'S AN EMAIL TO CHAMBERS.

 8              MS. CHRISTA:  RIGHT.

 9              THE COURT:  AND THAT WOULD BE -- THAT WOULD BE

10      HELPFUL.

11              AND I'LL TRY TO GIVE JUDGE KRONSTADT A LAY OF THE

12      LAND.

13              MR. MIRELL:  MAY I JUST INQUIRE VERY BRIEFLY.

14              THE COURT:  UH-HUH.

15              MR. MIRELL:  WITH RESPECT TO MS. CARPENTER, ARE

16      THERE ADDITIONAL DOCUMENTS, MR. MANDELL, THAT YOU UNDERSTAND

17      THAT SHE IS SUPPOSED TO BE LOCATING OR PRODUCING BEYOND WHAT

18      YOU'VE GIVEN US JUST TODAY?

19              MR. MANDELL:  MY -- WELL, I MEAN, AS I MENTIONED,

20      MY UNDERSTANDING IS THAT MS. CARPENTER IS VERY CLOSE TO MS.

21      BERRY AND TEXT MESSAGES HER -- JUST BASED ON THE DOCUMENTS

22      I'VE GIVEN YOU -- IT ALMOST SEEMS LIKE MULTIPLE TIMES ON A

23      DAILY BASIS.  AND THAT SHE HAS TEXT MESSAGES GOING BACK FOR

24      THE YEARS THAT SHE'S KNOWN HER.  SHE HAS AN IPHONE THAT I'M

25      TOLD IS CRACKED.  IT NEEDS TO BE CHARGED.  AND MAY HAVE TEXT

1   MESSAGES ON IT.  AND THAT'S -- THAT'S ALL I KNOW AT THIS

2   POINT.

3          I INDICATED THAT WE WANTED TO TAKE HER DEPOSITION,

4   THAT WE'D BE SENDING A SUBPOENA WITH A REQUEST FOR DOCUMENTS,

5   YOU KNOW, ASKING FOR THE KINDS OF COMMUNICATIONS WHERE SHE IS

6   GIVING MERCHANDISE TO MS. BERRY IN EXCHANGE FOR -- WELL, I

7   GUESS IT'S GOING TO BE IN EXCHANGE FOR AN AGREEMENT THAT MS.

8   BERRY MAY WEAR IT SOMEWHERE AT A PUBLIC EVENT, SOMETHING

9   ALONG THOSE LINES.  BUT SHE HAS TEXT MESSAGES AS FAR AS I'M

10   AWARE.

11          THE COURT:  DOES SHE --

12          MR. MANDELL:  SHE MAY HAVE THEM.  I HOPE SHE DOES.

13          THE COURT:  THE ANSWER TO MR. MIRELL'S QUESTION

14   BEING, YES, YOU UNDERSTAND THAT THERE ARE ADDITIONAL

15   DOCUMENTS?

16          MR. MANDELL:  I HOPE THAT THERE ARE ADDITIONAL

17   DOCUMENTS.  I THINK THERE'S A GOOD POSSIBILITY THERE ARE.

18   AGAIN, WITH A BROKEN IPHONE, I DON'T KNOW.

19          THE COURT:  SHE'S LOOKING FOR THEM.  OKAY.

20          MR. MANDELL:  EXACTLY.

21          MR. MIRELL:  I'M JUST -- IT JUST WOULD MAKE ALL THE

22   SENSE IN THE WORLD TO TRY TO GET THOSE DOCUMENTS AS EARLY AS

23   POSSIBLE AND THEN MAKE A DETERMINATION ABOUT WHETHER AND IF

24   WE NEED TO TAKE A DEPOSITION BASED ON THAT.

25          THE COURT:  YES.

1         MR. MANDELL:  THOSE --

2         THE COURT:  AND I THINK THEY AGREE.

3         MR. MANDELL:  I MEAN, OF COURSE -- I MEAN, THOSE

4    SAME TEXT MESSAGES IF THEY WERE SENT BY MS. BERRY, I MEAN,

5    SHE MAY HAVE THEM AS WELL.

6         THE COURT:  AND -- YES.  AND THE UNDERSTANDING IS

7    THAT THERE WOULD BE A SEARCH FOR THOSE, YES.

8         MR. MIRELL:  ABSOLUTELY.

9         THE COURT:  OKAY.

10         ALL RIGHT.  THANK YOU ALL.

11         MR. MANDELL:  THANK YOU, YOUR HONOR.

12         MR. MIRELL:  THANK YOU VERY MUCH, YOUR HONOR.

13         MS. CHRISTA:  THANK YOU, YOUR HONOR.

14         MS. LUPPEN:  THANK YOU, YOUR HONOR.

15         THE CLERK:  COURT'S ADJOURNED.

16         (PROCEEDINGS CONCLUDED 3:39 P.M.)

17

18

19

20

21

22

23

24

25

56

1              C E R T I F I C A T E

2

3          I CERTIFY THAT THE FOREGOING IS A CORRECT

4   TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

5   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

6

7

8

9   /S/ DOROTHY BABYKIN                 7/1/14

10  _____    _____

11  FEDERALLY CERTIFIED TRANSCRIBER     DATED

12  DOROTHY BABYKIN

13

14

15

16

17

18

19

20

21

22

23

24

25